## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

NORTHROP GRUMMAN SHIP
SYSTEMS, INC.,

        Plaintiff.,

   v.

THE MINISTRY OF DEFENSE OF THE
REPUBLIC OF VENEZUELA,

       Defendant.

C.A. No. 1:20-mc-00257-UNA

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF
UNDER 28 U.S.C. § 1610(C) AND FOR A WRIT OF ATTACHMENT *FIERI FACIAS***

OF COUNSEL:

Alexander A. Yanos *pro hac pending*
Carlos Ramos-Mrosovsky *pro hac pending*
Rajat Ranna *pro hac pending*
Robert Poole *pro hac pending*
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com
robert.poole@alston.com

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for Plaintiff*

DATED: September 15, 2020

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

SUMMARY OF ARGUMENT ....................................................................................... 2

STATEMENT OF FACTS .............................................................................................. 4

I.      The Arbitration Award And Judgment ................................................................ 4

II.     This Court Found PDVSA To Be Venezuela's Alter Ego In August 2018 And
        Authorized Attachment Of The PDVH Shares Accordingly. .............................. 5

III.    Events Subsequent To This Court's August 2018 Alter Ego Decision In
        *Crystallex* ........................................................................................................... 6

ARGUMENT .................................................................................................................. 9

I.      The Court Should Grant Huntington Ingalls Relief Under 28 U.S.C. § 1610(c)
        Because A Reasonable Time Has Elapsed Since Entry Of Judgment. ................. 9

II.     A Writ Of Attachment Against PDVH Shares Owned By PDVSA Is Appropriate
        Because PDVSA Remains Venezuela's Alter Ego Under The Guaidó
        Government. ....................................................................................................... 11

        A.      The *Crystallex* Alter Ego Decision Should Have The Effect Of Collateral
                Estoppel, At Least Through August 2018. ............................................. 11

        B.      Subsequent Events Since This Court's August 2018 Decision Should Not
                Cause The Court To Change Its Conclusion That PDVSA Is The Alter
                Ego Of The Venezuelan State .............................................................. 13

        C.      The United States Statement of Interest In *Crystallex* Confirms The
                Continuing Alter Ego Relationship Between PDVSA And The Venezuelan
                State ...................................................................................................... 17

        D.      Granting Huntington Ingalls's Motion Does Not Conflict With The United
                States Venezuela Sanctions Or Broader Foreign Policy Goals. ............ 18

CONCLUSION .............................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Bradburn Parent Teacher Store, Inc. v. 3M*,
 No. 02-7676, 2005 U.S. Dist. LEXIS 5315 (E.D. Pa. Mar. 30, 2005)....................................12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
 932 F.3d 126 (3d Cir. 2019), *cert. denied*, *Bolivarian Republic of Venez. v.*
 *Crystallex Int'l Corp.*, 206 L.Ed..2d 936 (2020) .................................................................6, 17

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
 No. 16-cv-0661 (RC), 2017 U.S. Dist. LEXIS 221611 (D.D.C. Jun. 9, 2017) ....................5, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez*,
 No. 1:17-mc-151-LPS (D. Del. Dec. 12, 2019), D.I. 154......................................................3, 8

*Crystallex International Corporation v. Bolivarian Republic of Venezuela*,
 333 F. Supp. 3d 380 (D. Del. 2018)....................................................................................3, 5, 6

*Elliott Assocs., L.P. v. Banco de la Nacion*,
 96 Civ. 7916 (RWS), No. 96 Civ. 7917 (RWS), 2000 U.S. Dist. LEXIS 15649
 (S.D.N.Y. June 22, 2000)......................................................................................................9, 10

*Energy Marine Servs., Inc. v. DB Mobility Logistics AG*,
 2020 U.S. Dist. LEXIS 7406 (D. Del. Jan. 22, 2016)............................................................12

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
 462 U.S. 611 (1983)..........................................................................................................5, 6, 16

*Gold Reserve v. Bolivarian Republic of Venez.*,
 No. 14-cv-2014 (JEB) (D.D.C. Jan. 20, 2016), D.I. 48 ..........................................................9

*Greene v. New Dana Perfumes Corp.*,
 287 B.R. 328 (D. Del. 2002)..................................................................................................12

*Groden v. N&D Transp. Co.*,
 866 F.3d 22 (1st Cir. 2017)....................................................................................................12

*Jiménez v. Palacios*,
 No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288 (Ch. Aug. 2, 2019), *aff'd,*
 2020 Del. LEXIS 253 (Del. July 22, 2020) ..........................................................7, 8, 14, 15

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi*
 *Negara*,
 No. H-01-0634, 2002 U.S. Dist. LEXIS 3976 (S.D. Tex. Jan. 24, 2002)...........................9, 10

*Lehigh Valley R. Co. v. State of Russia*,
  21 F.2d 396 (2d Cir.), *cert. denied*, 275 U.S. 571 (1927) .........................................13

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Bolivarian Republic of Venezuela*,
  No. 1:02-cv-00785-HSO-RHW, 2003 U.S. Dist. LEXIS 29844 (S.D. Miss. April 16, 2003) ..........................................................................................................1

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*
  No. 1:02-cv-00785-HSO-RHW (Mar. 31, 2020), Memorandum Opinion and Order Granting Plaintiff Northrop Grumman Ship Systems, Inc.'s Motion for Recognition and Execution of Arbitration Award ......................................................4

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*
  No. 1:02-cv-00785-HSO-RHW (July 23, 2020), Order Granting In Part And Denying In Part Without Prejudice Plaintiff's Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963 ...................................................................5

*Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*,
  553 F. Supp. 962 (N.D. Ill. 1982) ..............................................................................12

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
  419 F. Supp. 3d 51 (D.D.C. 2019) .................................................................5, 10, 11

*Red Tree Invs., LLC v. Petróleos De Venezuela, S.A.*,
  No. 19-cv-2519 (AJN), 2020 U.S. Dist. LEXIS 6409 (S.D.N.Y. Jan. 14, 2020) ...................11

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
  731 F. Supp. 619 (S.D.N.Y. 1990), *aff'd* 925 F.2d 566 (2d. Cir. 1991) ...............................13

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  30 F.3d 148 (D.C. Cir. 1994) .........................................................................................1

*Trs. of Nat'l Elevator Indus. Pension v. Lutyk*,
  140 F. Supp. 2d 447 (E.D. Pa. 2001), *aff'd sub nom.*, 332 F.3d 188 (3d Cir. 2003) .............................................................................................................................12

**RULES**

Federal Rules of Civil Procedure Rule 62(a) ....................................................................9

Federal Rules of Civil Procedure Rule 69(a)(1) ...............................................................1

Local Rule 69.1 ..................................................................................................................2

**STATUTES & REGULATIONS**

8 Del. C. § 169 ..................................................................................................................3

8 Del. C. § 324(a) ............................................................................................................1

10 Del. C. § 5031 ...........................................................................................................1

9 U.S.C. § 301 ...............................................................................................................2

28 U.S.C. § 1963 ....................................................................................................2, 4, 5

Executive Order No. 13850, 83 Fed. Reg. 55243 (Nov. 1, 2018) ................................18

Executive Order No. 13857, 84 Fed. Reg. 509 (Jan. 25, 2019) ...................................18

Executive Order No. 13884, 84 Fed. Reg. 38843 (Aug. 5, 2019) ................................18

Federal Arbitration Act, 9 U.S.C. §§ 9, 207, 302 and 304 ............................................2

Foreign Sovereign Immunities Act, generally ...............................................................6

    28 U.S.C. § 1603(a) ..............................................................................................1

    28 U.S.C. 1610(c) ..........................................................................1, 2, 5, 9, 20

    28 U.S.C. § 1610(a) ........................................................................................2, 17

    28 U.S.C. § 1610(a)(6) ...................................................................................1, 11

TREATIES

Inter–American Convention on International Commercial Arbitration [opened for
    signature Jan. 30,1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245] ..........................................1, 2

OTHER AUTHORITIES

Restatement (3d) of the Foreign Relations Law of the United States, § 208,
    Comment a .................................................................................................................13

"Frequently Asked Questions, Venezuela Sanctions," U.S. Department of the
    Treasury ....................................................................................................................19

Plaintiff and judgment creditor Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated ("Plaintiff" or "Huntington Ingalls"), respectfully submits this brief in support of its motion (1) for relief pursuant to Section 1610(c) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1610(c), and (2) for an order authorizing the Clerk of the Court to issue a writ of attachment *fieri facias* ("*fi. fa.*") in accordance with Section 1610(a)(6) of the FSIA, Rule 69(a)(1) of the Federal Rules of Civil Procedure, and Sections 5031 (10 Del. C. § 5031) and 324 (8 Del. C. § 324(a)) of the Delaware Code as to the shares of PDV Holding, Inc. ("PDVH"), a Delaware corporation fully-owned by Petróleos de Venezuela S.A. ("PDVSA"), the state oil company and alter ego of judgment debtor the Bolivarian Republic of Venezuela ("Venezuela").

## INTRODUCTION

On June 4, 2020, the United States District Court for the Southern District of Mississippi entered a final judgment ("the Judgment") enforcing an international arbitration award ("the Award") rendered against the Venezuelan Ministry of Defense and in favor of Huntington Ingalls in the amount of $137,977,646.43.[1]  The Mississippi federal district court did so pursuant to Articles 4 and 5 of the Inter-American Convention on International Commercial Arbitration of

---

[1] The Award was issued on February 19, 2018 by an international arbitration tribunal seated in Brazil.  The dispute between Huntington Ingalls and Venezuela arose out of Venezuela's non-payment for services provided in repairing two Venezuelan warships.  As a matter of law, the Ministry of Defense *is* the Venezuelan State and *not* one of its "instrumentalities."  *See Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Bolivarian Republic of Venezuela*, No. 1:02-cv-00785-HSO-RHW, 2003 U.S. Dist. LEXIS 29844, at *3 (S.D. Miss. April 16, 2003) ("The Defendant Ministry of Defense of the Republic of Venezuela (herein, 'The Ministry') *is a foreign state* as defined by the Foreign Sovereign Immunities Act. 28 U.S.C. § 1603(a)." (emphasis added)).  *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994) ("armed forces are . . . as a rule so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state").

1975 and the Federal Arbitration Act, 9 U.S.C. §§ 9, 207, 302 and 304.[2]  Huntington Ingalls registered the Judgment in this Court pursuant to 28 U.S.C. § 1963 on July 31, 2020.  *See* D.I. 1.  Because Venezuela continues to fail to pay the amount owed under the Judgment, Huntington Ingalls now moves that this Court: (1) find that a sufficient and "reasonable" period of time has elapsed since entry of judgment within the meaning of 28 U.S.C. § 1610(c) such that Huntington Ingalls may now seek to attach assets of Venezuela present in Delaware pursuant to 28 U.S.C. § 1610(a); and (2) specifically authorize Huntington Ingalls's attachment of the shares of PDVH which belong to Venezuela through its alter ego, PDVSA.[3]

## SUMMARY OF ARGUMENT

The Court should grant both parts of Huntington Ingalls's Motion.

1.      In the three months since the Mississippi federal district court entered the judgment, Venezuela has not taken any action to pay Huntington Ingalls.  Consistent with the practice of this and other federal courts in similar cases, a "reasonable" period of time within the meaning of 28 U.S.C. § 1610(c) has therefore elapsed and Huntington Ingalls should be allowed to take active measures to collect on its judgment.

2.      Assuming this Court agrees that a reasonable time has elapsed for Venezuela to have voluntarily paid the Judgment, the remaining question for the Court is then whether PDVSA remains Venezuela's alter ego, such that PDVSA's assets in the United States may be

---

[2] *See* Inter–American Convention on International Commercial Arbitration [opened for signature Jan. 30,1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245], (reprinted after 9 U.S.C. § 301).

[3] In accordance with Local Rule 69.1, Huntington Ingalls submits a proposed writ of attachment *fieri facias*, as well as a praecipe, with this motion. *See* Exs. 1, 2.  References to "Yanos Decl. Ex. [_]" are to the exhibits attached to the supporting Declaration of Alexander A. Yanos, dated September 15, 2020.  Huntington Ingalls is providing notice of this motion to Venezuela, PDVSA, and PDVH.  *See* Yanos Decl. ¶¶ 3–5.

deemed commercial assets of Venezuela held through its alter ego and thus subject to Huntington Ingalls's attachment.[4]

3.      The Court has reached this conclusion before.  In August of 2018, it found that PDVSA was the alter ego of Venezuela and authorized attachment of PDVH's shares in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 391 (D. Del. 2018).  Subsequently, in an Order dated December 12, 2019, the Court declined to give collateral estoppel effect to its alter ego finding for the benefit of other judgment creditors of Venezuela, citing the potential effect of intervening changes in circumstances on its alter ego analysis, including the United States' decision in January of 2019 to transfer its recognition of Venezuela's legitimate government from that headed by Mr. Nicolás Maduro to that led by Mr. Juan Guaidó.  *See* Memorandum Order Regarding Pending Motions and Stay, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151 (Dec. 12, 2019), D.I. 154 at 13–17.

4.      Despite that caution, this Court's original conclusion on the alter ego issue remains correct today.  Mr. Guaidó's government treats PDVSA as a part of the Venezuelan State and uses its assets in commerce no less than Mr. Maduro's regime did (and, though no longer recognized as the legitimate government by the United States, continues to do).  Huntington Ingalls should therefore be allowed to attach PDVH's shares.

5.      Otherwise, as no other comparable commercial assets of Venezuela have been identified for attachment in the United States, to deny Huntington Ingalls the attachment it seeks—and thus the opportunity to participate in any prospective auction of PDVH shares under the auspices of this Court assuming appropriate licenses from the U.S. Department of the

---

[4] PDVH's shares are located in Delaware as a matter of law.  *See* 8 Del. C. § 169 ("For . . . purposes of . . . attachment [and] garnishment . . . the situs of the ownership of the capital stock of all corporations existing under the laws of this State . . . shall be regarded as in this State.").

Treasury's Office of Foreign Assets Control ("OFAC") are received—would leave Huntington Ingalls without an effective remedy and work unjustifiable discrimination among Venezuela's judgment creditors.

6.      Huntington Ingalls is applying to OFAC for authorization to effectuate the attachment of the PDVH shares held by PDVSA in this District and will keep the Court advised of all developments in this regard.

## STATEMENT OF FACTS

### I.      The Arbitration Award And Judgment

On February 19, 2018, an arbitral tribunal (the "Tribunal") issued the Award against Venezuela and in favor of Huntington Ingalls in the net amount of US$ 128,862,457.27 not including post-Award interest.   *See* Memorandum Opinion and Order Granting Plaintiff Northrop Grumman Ship Systems, Inc.'s Motion for Recognition and Execution of Arbitration Award, *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.* No. 1:02-cv-00785-HSO-RHW (Mar. 31, 2020) (Yanos Decl. Ex. 3) at 7.

On June 26, 2019, Huntington Ingalls filed a Motion to Recognize and Execute the Award in the Southern District of Mississippi.  *Id.* at 8–9.  The Mississippi federal district court granted Huntington Ingalls's Motion on March 31, 2020, in an opinion and order that rejected Venezuela's argument that the Tribunal had acted beyond its authority when it determined that Rio de Janeiro should serve as the arbitral seat.  *See id.* at 12–15.  The Mississippi federal district court entered Judgment on June 4, 2020 in the amount of $137,977,646.43.[5]  D.I. 1.  Then, on July 23, 2020, the Mississippi federal district court granted Huntington Ingalls' Motion for Relief

---

[5] Venezuela has since appealed the district court's order.  *See Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*, No. 20-60347 (5th Circ.).  In doing so, Venezuela did not file a supersedeas bond.  Yanos Decl. ¶ 7.

Pursuant to 28 U.S.C. § 1963, finding that Huntington Ingalls had shown good cause to register the Judgment in this district during the pendency of Venezuela's appeal. *See* Order Granting In Part And Denying In Part Without Prejudice Plaintiff's Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.* No. 1:02-cv-00785-HSO-RHW (July 23, 2020) (Yanos Decl. Ex. 4). At the same time, the Mississippi federal district court ruled that any determination about timing of the attachment of assets pursuant to § 1610(c) should be made by this Court. *See id*. at 5–6.[6] Huntington Ingalls then registered the Judgment with this Court pursuant to 28 U.S.C. § 1963 on July 31, 2020. *See* D.I. 1.

## II.   This Court Found PDVSA To Be Venezuela's Alter Ego In August 2018 And Authorized Attachment Of The PDVH Shares Accordingly.

Huntington Ingalls is not the first of Venezuela's judgment creditors to appear before this Court. The first was Crystallex International Corp. ("Crystallex"), which on June 19, 2017, registered a judgment from the United States District court for the District of Columbia based on another international arbitration award. On August 9, 2018, this Court found, based on an extensive factual record, that PDVSA was Venezuela's alter ego. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380, 391 (D. Del. 2018) (applying the test for setting aside the presumption of separateness between a State and its instrumentality set forth in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983) ("*Bancec*")). The factual record presented by Crystallex proved that the Venezuelan State exerted pervasive control over PDVSA, "including its day-to-day operations" thus "rendering

---

[6] In other cases, the "reasonable time" inquiry under 28 U.S.C. 1610(c) has been decided by the court whose judgment is to be enforced. *See*, *e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 16-cv-0661 (RC), 2017 U.S. Dist. LEXIS 221611, at *1 (D.D.C. Jun. 9, 2017); *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, 419 F. Supp. 51, 53 (D.D.C. 2019).

PDVSA the alter ego of Venezuela."  *Id.* at 399.  It followed that Crystallex, as Venezuela's

judgment creditor, could attach the PDVH shares located in this District consistent with the FSIA

because they were the property of Venezuela's alter ego—and thus of Venezuela itself—used in

commerce.[7]  *See id.* at 418 ("As Crystallex states, 'it is difficult to imagine property with more of

a commercial use than shares of a Delaware for-profit corporation that itself owns, through an

intermediate holding company, a multi-billion dollar Delaware petroleum corporation. . .'").  The

Third Circuit affirmed this Court's alter ego decision and the Supreme Court denied certiorari in

May 2020.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126, 150 (3d

Cir. 2019), *cert. denied*, *Bolivarian Republic of Venez. v. Crystallex Int'l Corp.*, 206 L.Ed.2d 936

(2020).

### III.  Events Subsequent To This Court's August 2018 Alter Ego Decision In *Crystallex*

In the months immediately following this Court's alter ego decision in *Crystallex*, the

relationship between Venezuela and PDVSA continued unchanged.  The then-recognized

Venezuelan government of Nicolás Maduro continued to exercise complete control over

---

[7] In finding PDVSA to be Venezuela's alter ego, this Court considered a voluminous evidentiary record proving Venezuela's pervasive use of PDVSA and its assets as simply an extension of the state itself.  Among other things, this Court found the *Bancec* standard satisfied where the evidence showed that (i) Venezuela used PDVSA's property as its own; (ii) ignored PDVSA's formally separate status; (iii) subjected PDVSA to close political control; (iv) required high level governmental approvals for routine business decisions; and (v) caused PDVSA to act directly as a policy arm of the State.  *See generally Crystallex Int'l Corp.*, 333 F. Supp. 3d at 402–03.  To the extent that the relationship between the Maduro regime and those parts of PDVSA that it still effectively controls remains relevant, there has been no change in the tenor of that relationship that would warrant a conclusion different from that which this Court reached in August of 2018. *See infra* n. 8.  *See also* Memorandum of Law in Support of OIEG's Motion for Reconsideration, *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, No. 1:19-mc-00290 (D. Del. Dec. 23, 2019), D.I. 28 at 4–6.

PDVSA, among other things appointing military commanders and Venezuela's Minister of Oil to the PDVSA board by decree and subjecting the company to military control.[8]

In January of 2019, however, Venezuela's National Assembly rejected Nicolás Maduro's claim to reelection, declared the election results illegitimate and instead named opposition leader Juan Guaidó as interim president.[9]  The United States recognized Mr. Guaidó's government as the legitimate government of Venezuela on January 23, 2019.[10]

Unable to control territory in Venezuela, Mr. Guaidó's administration has prioritized external matters, including recovering control of overseas PDVSA entities (including, in particular those in the United States) and attempting to negotiate the restructuring of Venezuela's debts—including adverse arbitration awards.  In connection with the latter goal, Mr. Guaidó's government has, as a matter of policy, treated PDVSA's debt obligations as equivalent to those of the Venezuelan State.[11]

As part of this program, the Guaidó government in February of 2019 appointed a parallel *ad hoc* board of directors of PDVSA.  *See Jiménez*, 2019 Del. Ch. LEXIS 288, at *12.  That new

---

[8] *See Jiménez v. Palacios*, No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288, at *8 n.7 (Ch. Aug. 2, 2019), *aff'd,* 2020 Del. LEXIS 253 (Del. July 22, 2020) (listing Mr. Maduro's October 2018 appointments).  *See also* Alexandra Ulmer & Marianna Parraga, "Oil output goes AWOL in Venezuela as soldiers run PDVSA," REUTERS (Dec. 26, 2018) (Yanos Decl. Ex. 5); "Minister Quevedo Inspected Full Operability of VHICOA", PETROLEOS DE VENEZUELA, S.A. (Oct. 28, 2019) (showing Mr. Quevedo as both a minister and president of PDVSA) (Yanos Decl. Ex. 6); "Venezuela names El Aissami to PDVSA board of directors," REUTERS (Sept. 9, 2018) (Yanos Decl. Ex. 7); Joshua Goodman "Tareck El Aissami, ICE '10 most-wanted fugitive' tapped to revamp Venezuela's oil industry," ASSOCIATED PRESS (Apr. 27, 2020) (Yanos Decl. Ex. 8).

[9] *See generally* Ana Vanessa Herrero, "After U.S. Backs Juan Guaidó as Venezuela's Leader, Maduro Cuts Ties," NEW YORK TIMES (Jan. 23, 2019) (Yanos Decl. Ex. 9).

[10] Statement Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela, THE WHITE HOUSE (Jan. 23, 2019) (Yanos Decl. Ex. 10).

[11] Ben Bartenstein, "U.S. Shields Citgo From Creditors in Win for Venezuela's Guaidó," BLOOMBERG (Oct. 24, 2019) (Yanos Decl. Ex. 11).

Guaidó-appointed board in turn appointed new directors for three Delaware entities: PDVH, Citgo Holding Inc., and Citgo Petroleum Corp.  *See id.* at *33–34 (holding that U.S. Courts must recognize Mr. Guaidó's appointed ad hoc board members as the rightful members of the boards for PDVSA, PDVH, Citgo Holding Inc., and Citgo Petroleum Corp).  Mr. Guaidó constituted the *ad hoc* board with the expressed goal of "recover[ing] and protect[ing] the nation's assets abroad."[12]  At present, the *ad hoc* board appointed by Mr. Guaidó claims control over PDVSA and its assets, regularly reporting its operations to the National Assembly.  *Id.*

In light of the change in the United States' recognition of the legitimate government of Venezuela, this Court on December 12, 2019 declined to give its prior *Crystallex* decision the effect of collateral estoppel when two other judgment creditors—OI European Group ("OIEG") and Saint-Gobain Performance Plastics Europe—sought writs of attachment against the PDVH shares.[13]  *See* Memorandum Order Regarding Pending Motions and Stay*, Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-151-LPS (D. Del. Dec. 12, 2019), D.I. 154 at 13–16. Noting that the "relevant portion of PDVSA, which is the property in the U.S.," was by then "under a new legal regime . . . recognized by the U.S.," this Court ruled that "whether PDVSA can, under the present circumstances, be deemed an alter ego of the Republic is not identical to the issue decided [in the 2018 order]."  *See id.* at * 20.  Accordingly, this Court held that judgment creditors of Venezuela other than Crystallex could not rely solely on the *Crystallex* decision to establish their entitlement to attach PDVH shares owned by PDVSA in Delaware

---

[12]  "Guaidó on recovered assets: 'Our commitment is to Venezuelans and transparency,'" Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (Aug. 7, 2020) (Yanos Decl. Ex. 12).

[13]  The undersigned counsel represented Saint-Gobain Performance Plastics Europe in that proceeding.  *See Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela et al*, No. 1:18-cv-01963-LPS (D. Del.) (transferred to D.D.C., Jan. 15, 2020).

because "the pertinent date on which an alter ego relationship must exist (or must have existed) may well differ in different cases involving different creditors" and because "later events" might supplement the record and lead to a different conclusion.  *See id.* at *21.  Instead, this Court ruled that judgment creditors of Venezuela's seeking to attach PDVH shares "will have to prove that PDVSA is and/or was the Republic's alter ego" at the relevant date for themselves.  *Id.* at *23.

## ARGUMENT

### I.  The Court Should Grant Huntington Ingalls Relief Under 28 U.S.C. § 1610(c) Because A Reasonable Time Has Elapsed Since Entry Of Judgment.

Section 1610(c) of the FSIA provides that, when a judgment has been entered against a foreign state, attachment of the foreign state's property in the United States in support of execution of the judgment is permitted only once "the court has . . . determined that a reasonable period of time has elapsed following the entry of judgment."  *See* 28 U.S.C. § 1610(c).  "What constitutes a 'reasonable time'" is a matter for the Court's discretion and "will vary according to the nuances of each case."  *See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, No. H-01-0634, 2002 U.S. Dist. LEXIS 3976, at *4 (S.D. Tex. Jan. 24, 2002).

Courts have regularly found a "reasonable" period of time to have passed for purposes of 28 U.S.C. § 1610(c) where, as here, the judgment creditor's motion was filed shortly after judgment and where the 30-day automatic stay imposed by Rule 62(a) will, as a practical matter, have expired by the time the judgment creditor's motion is decided.  *See*, *e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 2017 U.S. Dist. LEXIS 221611, at *2–3 (finding that "two months is a reasonable time" and counting time elapsed since filing a motion under 28 U.S.C. § 1610(c) was filed 18 days after entry of judgment).  *See also Gold Reserve v. Bolivarian Republic of Venez.*, No. 14-cv-2014 (JEB) (D.D.C. Jan. 20, 2016), D.I. 48 (two

months after entry of judgment); *Elliott Assocs., L.P. v. Banco de la Nacion*, 96 Civ. 7916 (RWS), No. 96 Civ. 7917 (RWS), 2000 U.S. Dist. LEXIS 15649, at *1 (S.D.N.Y. June 22, 2000) (ten days after entry of judgment).

In this case, more than four months have passed since the Mississippi federal district court's order confirming the Award and two months since entry of Judgment. Twenty-nine months have passed since the Tribunal issued the Award itself. Venezuela has had ample time to satisfy its obligations to Huntington Ingalls and has amply demonstrated that it does not want to do so. *See Karaha Bodas,* 2002 U.S. Dist. LEXIS 3976, at *6 (noting that the sovereign debtor "[knew] the extent of its potential liability for over a year . . . when the Arbitral Tribunal issued its final award").

Under these circumstances, four months following the district court's order and two months following the Judgment is a more than reasonable period for Venezuela to finalize arrangements to pay the Award. It has not done so. Venezuela's failure to take any steps in this regard is unsurprising: to the knowledge of undersigned counsel, in the past two years, Venezuela has repeatedly failed to voluntarily satisfy the international arbitration awards rendered against it and never posted a bond in support of its appeals. *See* Yanos Decl. ¶ 7.

Importantly, Venezuela's political instability does not alter a finding that a reasonable amount of time has passed since the Judgment. Courts have in fact found exactly the opposite. For example, in *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 419 F. Supp. 3d at 54–55, the district court specifically noted:

> [T]he ***political uncertainty in Venezuela is also a circumstance that bolsters plaintiff's argument that it should be allowed to seek attachment***. The "reasonable period of time" formulation is meant to allow the foreign government sufficient time to work through its internal procedures to satisfy the judgment. Defendant has not pointed the Court to any mechanism or internal procedures through

> which it will satisfy the judgment.  In fact, defendant agrees that it
> is functionally unable to do so at this time.

(emphasis added); *see also Red Tree Invs., LLC v. Petróleos De Venezuela, S.A.*, No. 19-cv-2519

(AJN), 2020 U.S. Dist. LEXIS 6409, at *8, (S.D.N.Y. Jan. 14, 2020) ("While the Court is

mindful of the political upheaval and attendant economic and humanitarian crises Venezuela is

currently experiencing, 'it would not be appropriate or fair to the plaintiff to stay [this] case

indefinitely until. . . transition [to the Guaidó government] is completed.'") (quoting *OIEG*, 419

F. Supp. 3d 51 at 56).

For all these reasons, this Court should find that a reasonable amount of time has elapsed

since entry of the Judgment and allow Huntington Ingalls to seek attachment of the PDVH shares

in this District in satisfaction of the Judgment.

## II. A Writ Of Attachment Against PDVH Shares Owned By PDVSA Is Appropriate Because PDVSA Remains Venezuela's Alter Ego Under The Guaidó Government.

Section 1610(a)(6) of the FSIA provides that a foreign State's property used for

commercial activity in the United States may be attached in aid of execution of a judgment based

on an order confirming an arbitral award rendered against the foreign state.  *See* 28 U.S.C. §

1610(a)(6).  Huntington Ingalls has registered a judgment in this District from a United States

court confirming an arbitral award rendered against Venezuela.  *See* D.I. 1.  Venezuela, through

its alter ego PDVSA, owns shares in PDVH located in this District and exercises its ownership of

those shares in commerce.  As such, Venezuela's shares in PDVH are not immune to a writ of

attachment for the fulfillment of the Award.

### A. The *Crystallex* Alter Ego Decision Should Have The Effect Of Collateral Estoppel, At Least Through August 2018.

As a preliminary matter, the Court's alter ego holding from *Crystallex* must be ***at least***

determinative up to August of 2018.  *Cf. Crystallex*, 2019 U.S. Dist. LEXIS 214167, at *23 ("any

11

creditor may be able to find support (perhaps strong support) in the record created in the Crystallex Asset Proceeding and the finding reached (and affirmed) [there]").  Indeed, courts have often applied collateral estoppel to litigated issues specific to certain time frames.  *See, e.g.*, *Bradburn Parent Teacher Store, Inc. v. 3M*, No. 02-7676, 2005 U.S. Dist. LEXIS 5315, at *20 (E.D. Pa. Mar. 30, 2005) ("[F]or the period from June 11, 1993 through October 13, 1999, the issues for which Bradburn seeks collateral estoppel in this case are the same as those before the jury in [another proceeding]. Accordingly, the Court finds that all five issues Bradburn seeks to preclude satisfy the first element for the application of collateral estoppel for the time period from June 11, 1993 through October 13, 1999."); *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 553 F. Supp. 962, 966 (N.D. Ill. 1982) ("Because [another proceeding's] findings relevant here are focused on the 1970-71 period, any collateral estoppel effect must be so limited.").

This Court has yet to decide what date should govern the fresh alter ego analysis called for by its December 2019 decision rejecting OIEG and Saint-Gobain's collateral estoppel theory.  If a date certain controls, however, courts have frequently found that it is the date on which liability arose.  *See Groden v. N&D Transp. Co.*, 866 F.3d 22, 30 (1st Cir. 2017) (finding that a plaintiff could state a claim for alter ego liability under ERISA by "claiming that [one company] was [another's] alter ego when the withdrawal liability arose"—that is "at the times pertinent."); *Energy Marine Servs., Inc. v. DB Mobility Logistics AG*, 2020 U.S. Dist. LEXIS 7406, at *8 (D. Del. Jan. 22, 2016) (whether parties were alter egos "[d]uring the relevant time frame," 2008 to 2010); *Greene v. New Dana Perfumes Corp.*, 287 B.R. 328, 343 (D. Del. 2002) (analyzing the parties' "separate corporate existence at the time in question," 1998); *Trs. of Nat'l Elevator Indus. Pension v. Lutyk*, 140 F. Supp. 2d 447, 457 (E.D. Pa. 2001), *aff'd sub nom.*, 332 F.3d 188

(3d Cir. 2003) (citations omitted) ("Here, the relevant time period is the time at which the corporation incurred liability").

With regard to Huntington Ingalls, Venezuela incurred liability in February of 2018 when the Tribunal issued the Award and Venezuela failed to pay. That the United States thereafter transferred its recognition from Mr. Maduro's government to Mr. Guaidó's should make no difference where the Award was, like the Judgment, a liability of the State, itself a legal person.[14] Mr. Guaidó's government is—as it has acknowledged—responsible for liabilities incurred during Mr. Maduro's tenure.[15] On this basis, this Court's 2018 alter ego decision should have preclusive effect because PDVSA and Venezuela were—as this Court has determined—alter egos at the time that liability was incurred. *See Crystallex*, 2019 U.S. Dist. LEXIS 214167, at * 21 (acknowledging a "finding of an alter ego relationship as of August 2018").

**B.    Subsequent Events Since This Court's August 2018 Decision Should Not Cause The Court To Change Its Conclusion That PDVSA Is The Alter Ego Of The Venezuelan State**

---

[14]  *See*, *e.g.*, *Lehigh Valley R. Co. v. State of Russia*, 21 F.2d 396, 401 (2d Cir.), *cert. denied*, 275 U.S. 571 (1927) ("A monarchy may be transformed into a republic, or a republic into a monarchy; absolute principles may be substituted for constitutional, or the reverse; but, though the government changes, the nation remains, with rights and obligations unimpaired.") and *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 731 F. Supp. 619, 621 (S.D.N.Y. 1990), *aff'd* 925 F.2d 566 (2d. Cir. 1991) ("International law sharply distinguishes the succession of state, which may create a discontinuity of statehood, from a succession of government, which leaves statehood unaffected. It is generally accepted that a change in government, regime or ideology has no effect on that state's international rights and obligations because the state continues to exist despite the change.") (citing Restatement (3d) of the Foreign Relations Law of the United States, § 208, Comment a.).

[15]  *See* Guidelines for the Renegotiation of the Chavez/Maduro Era Legacy Public External Debt, Office of the Special Attorney General of the Bolivarian Republic of Venezuela (July 1, 2019) (Yanos Decl. Ex. 13) at § 3 ("[N]o different treatment shall be accorded to . . . foreign currency-denominated claims as a result of their origin (for example, whether arising pursuant to a debt instrument, an unpaid invoice, an expropriation, etc.)").

Yet even assuming that the Court should look to later events—and particularly to the impact of the United States' recognition of Mr. Guaidó's government—the result is no different.

*First*, between August 2018 and January 2019, the United States continued to recognize Mr. Maduro as the legitimate president of Venezuela.  Over this period, the Maduro regime's treatment of PDVSA as coterminous with the Venezuelan State continued unmistakably and unabated.  For example, in October of 2018, Maduro named General Manuel Salvador Quevedo Fernández, a career military officer and then-Minister of Oil as president of the board of PDVSA and Tareck El Aissami, the then Minister of Industry and National Production, as External Director of PDVSA.  *Jiménez*, 2019 Del. Ch. LEXIS 288, at *8 n.7.[16]  In the later part of 2018, Mr. Quevedo imposed a military regime on PDVSA, arresting workers for operational mistakes and deploying active military personnel aboard tankers.[17]  In short, the attitude of the Maduro regime towards PDVSA during this period was no different than prior to this Court's alter ego decision in *Crystallex*, and there is no reason to imagine that this Court's decision would have been different had it come a few months later.

Neither does the United States' recognition of Mr. Guaidó as president in January of 2019, or the attitude of Mr. Guaidó's administration toward PDVSA and its related United States entities, warrant a change from this Court's previous finding that PDVSA is the alter ego of the Venezuelan State.  To be sure, Mr. Guaidó's government does not actually have the physical ability to control as much of PDVSA as Mr. Maduro's.  Nevertheless, following Mr. Guaidó's rise as president, his government has continued to identify PDVSA as part and parcel of the Venezuelan State.  For example, on February 8, 2019, within in a month of declaring himself

---

[16] *See also supra* n.8.

[17] Yanos Decl. Ex. 5.

interim president on January 23, 2019, Mr. Guaidó consolidated power by appointing a new, *ad hoc* board of directors to PDVSA pursuant to powers granted to him by Venezuela's National Assembly. *See Jiménez*, 2019 Del. Ch. LEXIS 288, at *12. Mr. Guaidó's administration characterized that action as part of "taking progressive and orderly control of the **assets of our Republic abroad**" in order to "speed up the political transition."[18]

Further, in a statement on the National Assembly website, Mr. Guaidó's government describes CITGO (which is a subsidiary of PDVH) as "**one of the most valuable assets of the nation**."[19] If CITGO is an "asset of the nation," it follows that the shares of its Delaware parent company must be as well. Similarly, a statement by Venezuela's ambassador to the United States posted on the National Assembly website described U.S. Treasury regulations that, in Venezuela's view, work to shield against attachment of CITGO assets as a diplomatic "achievement of the interim government of President Juan Guaidó to permanently secure the **assets of the Venezuelan state**."[20] Huntington Ingalls, of course, is a judgment creditor "of the Venezuelan State."

Mr. Guaidó's approach to restructuring Venezuela's debt further confirms his government's identification of PDVSA with the State. In this crucial context, Mr. Guaidó's government makes no meaningful distinction between the assets and liabilities of the Venezuelan State and those of PDVSA. Instead, Mr. Guaidó's government has called for "equal treatment" of all claims subject to renegotiation, no matter "the identity of the public sector obligor." *See*

---

[18] Renzo Pipoli, "Venezuela's Guaidó to name new boards of PDVSA and Citgo," *UPI* (Jan. 29, 2019) (Yanos Decl. Ex. 14).

[19] Yanos Decl. Ex. 12.

[20] "Venezuelan Interim Government Achieves Strengthening of U.S. Treasury Measures for the Protection of CITGO and Other Assets," Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (Nov. 21, 2019) (Yanos Decl. Ex. 15).

Yanos Decl. Ex. 13.   In its position on renegotiation of Venezuela's sovereign debt, Mr. Guaidó's government defines "public sector obligator" as "the Republic, PDVSA or another public sector entity."   *Id.*

Mr. Guaidó's government is also seeking to invalidate bonds issued by Mr. Maduro's government through litigation in the Southern District of New York.   In doing so, it has stated that every PDVSA contract with a foreign national must be approved by the legislature.   *See* PDVSA Memorandum of Law in Support of Motion for Summary Judgment, *Petroleos De Venez. S.A. et al v. MUFG Union Bank, N.A. et al*, No. 1:19-cv-10023 (S.D.N.Y. June 15, 2020), D.I. 117, at 30 (Yanos Decl. Ex. 16) (seeking to avoid obligations to PDVSA bondholders by arguing that all of PDVSA's contracts required prior approval by Venezuela's National Assembly) and at n. 84 (stating that "[t]here is no dispute that PDVSA and PDVSA Petróleo, which are 'attached' to (and thus controlled by) Venezuela's Ministry of Petroleum and Mining, are part of the National Public Administration of the Venezuelan Republic").   In short, the Venezuelan State's position is that PDVSA's borrowing is the State's borrowing and its business decisions are likewise those of the Venezuelan State.   This is precisely the kind of extensive control contemplated by the Supreme Court in *Bancec* and, though played in a different key by a new government, that was the foundation for this Court's earlier alter ego finding.

The State's continued identity with and extensive control over PDVSA is also manifest from the manner in which PDVSA accounts for its activities.   In August of 2020, the President of the *ad hoc* PDVSA board appointed by Mr. Guaidó, reported to the National Assembly's permanent committees on Energy and Petroleum, Finance and Economic Development, and

Comptrollership. [21]   During that report, which was broadcast live to all Venezuelans, Mr. Pacheco announced that the *ad hoc* board appointed by President Guaidó had taken "***total control***" of PDV Holding, Inc., CITGO Holding, Inc, and CITGO Petroleum Corporation.  *Id.*

Not only has the new Guaidó administration maintained total control over PDVSA, it also has continued to use those assets in commerce, as required for attachment pursuant to § 1610(a). This point was specifically confirmed by the Third Circuit in its decision affirming this Court's alter ego finding from *Crystallex*, which among other things noted that "President Guaidó in February 2019 appointed an *ad hoc* administrative board to represent PDVSA in its capacity as sole shareholder of PDVH for appointing a new board of directors of that entity."  *See Crystallex Int'l Corp.*, 932 F.3d at 151.  As a result, "the shares continue to be used in commerce."  *Id.* Venezuela has since exercised that same commercial power when Mr. Guaidó appointed additional directors to PDVSA's board in June of 2020.[22]

C.   **The United States Statement of Interest In *Crystallex* Confirms The Continuing Alter Ego Relationship Between PDVSA And The Venezuelan State.**

Setting to one side the United States' resistance to Crystallex's demands that it be allowed to conduct a speedy auction of PDVH's shares, the submissions of the United States before this Court and in the broader policy arena confirm that the United States itself recognizes the continuing and fundamental identity of PDVSA with the Venezuelan State.

In the Statement of Interest filed in the *Crystallex* case, the United States admits that its goal in calling for restraint as to any auction of PDVH shares is to forestall the perception that

---

[21]  "PDVSA's ad hoc Board of Directors highlights the transparent management of its subsidiaries in the U.S.," Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (Aug. 5, 2020) (Yanos Decl. Ex. 17).

[22]  "Venezuela's opposition names new members to PDVSA ad-hoc board", REUTERS (June 30, 2020) (Yanos Decl. Ex. 18).

the Guaidó administration cannot protect **Venezuela's** assets.  Statement of Interest of the United

States of America, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151-

LPS (D. Del. July 16, 2020), D.I. 212-1 at 3; Reply Brief In Support of the Statement of Interest

of the United States, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151-

LPS (D. Del. July 16, 2020), D.I. 220 at 8 ("Should these assets be advertised for public auction

at this time, the Venezuelan people would seriously question the interim government's ability to

protect **the nation's assets**, thereby weakening it and U.S. policy in Venezuela today." (emphasis

added)).  The same understanding is clearly reflected in the United States' sanctions applicable

to Venezuela, which define "Government of Venezuela" to include PDVSA.  *See*, *e.g.*, Executive

Order No. 13857, 84 Fed. Reg. 509, 509–10 (Jan. 25, 2019) (amending the definition of

"Government of Venezuela" in prior Executive Orders *explicitly to include PDVSA*) and

Executive Order No. 13884, 84 Fed. Reg. 38843, 38843–45 (Aug. 5, 2019) (blocking the property

of "the Government of Venezuela," which includes PDVSA).  Where the Executive Branch, with

its foreign policy and intelligence apparatus, has equated PDVSA with the Venezuelan State, this

Court should feel comfortable drawing the same conclusion.

### D. Granting Huntington Ingalls's Motion Does Not Conflict With The United States Venezuela Sanctions Or Broader Foreign Policy Goals.

Both this Court and the Third Circuit have previously ruled that United States sanctions

targeting the now-unrecognized Maduro regime and also impacting PDVSA's assets in the

United States did not preclude the issuance of a writ of attachment in August of 2018.  Although

the U.S. Venezuela sanctions have evolved since that time, *authorizing* the attachment

Huntington Ingalls seeks would not fall afoul of those regulations.[23]

---

[23] *See* Executive Order No. 13850, 83 Fed. Reg. 55243, 55243–45 (Nov. 1, 2018), which blocks
property and interests in property from transfer or dealing with various persons with dealings

OFAC has explicitly advised that a specific license "is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program, or for a U.S. court or its personnel, to hear such a case."[24] According to this guidance, a specific license would be required for the "purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property." *Id.* OFAC defines such measures to include attaching blocked property. *See id.*

Consistent with this guidance, Huntington Ingalls will be applying to OFAC for a license authorizing its attachment of PDVH shares in the coming days and will keep the Court advised on the process of its application.

Otherwise, the United States' Statement of Interest is not especially germane to Huntington Ingalls's present motion. To the extent that the United States urges the Court to pause proceedings until OFAC approves Crystallex's application for a specific license to auction attached Venezuelan assets, *see* Statement of Interest of the United States of America, No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), D.I. 212 at 8–11, Huntington Ingalls takes no position. Huntington Ingalls seeks only to be in a position to benefit from any eventual auction of PDVH's shares as a judgment creditor of Venezuela's. Huntington Ingalls' motion thus does not implicate the concerns expressed in the United States' Statement of Interest. In its own words:

> the United States has not argued that its foreign policy interests "warrant[] stripping Crystallex's lien on PDVH," or otherwise

---

within Venezuela; Executive Order No. 13884, 84 Fed. Reg. 38843, 38843–45 (Aug. 5, 2019), which, in relevant part, blocks property of the Venezuelan Government (including PDVSA) from being "transferred, paid, exported, withdrawn, or otherwise dealt in" and Executive Order No. 13857, 84 Fed. Reg. 509 (Jan. 25, 2019).

[24] *See* "Frequently Asked Questions, Venezuela Sanctions," U.S. Department of the Treasury (Yanos Decl. Ex. 19) at 35 (FAQ No. 808).

requested deference regarding the legal questions surrounding the Rule 60(b) motion. Instead, the United States requests that the Court give weight to U.S. foreign policy concerns when considering **whether to take further steps** toward a forced sale at this time.

Reply Brief In Support of the Statement of Interest of the United States, No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), at D.I. 220 at 2 (citations omitted and emphasis added). By its present motion, however, Huntington Ingalls seeks not to take "further steps toward a forced sale," but only to reach the same stage that Crystallex *has already reached*.

### CONCLUSION

For the above reasons, Huntington Ingalls respectfully requests that this Court enter an order (1) finding that a reasonable period of time has elapsed since judgment was entered allowing a writ of attachment pursuant to 28 U.S.C. § 1610(c); and (2) authorizing the Clerk of the Court to issue the proposed writ of attachment *fi. fa.* to PDVH, authorizing the U.S. Marshals Service to serve the writ, and granting such other and further relief as the Court deems just and proper.

DATED: September 15, 2020

Respectfully submitted:

/s/ Laura Davis Jones

OF COUNSEL:

Alexander A. Yanos *pro hac pending*
Carlos Ramos-Mrosovsky *pro hac pending*
Rajat Ranna *pro hac pending*
Robert Poole *pro hac pending*
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com
robert.poole@alston.com

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for Plaintiff*