## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., <br><br> Plaintiff., <br><br> v. <br><br> THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No. 1:20-mc-00257-LPS |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR RELIEF UNDER 28 U.S.C. § 1610(C) AND FOR A WRIT OF ATTACHMENT *FIERI FACIAS*

OF COUNSEL:

Alexander A. Yanos *pro hac*
Carlos Ramos-Mrosovsky *pro hac*
Rajat Ranna *pro hac*
Robert Poole *pro hac*
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com
robert.poole@alston.com


DATED: February 19, 2021

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski, Stang, Ziehl & Jones, LLP
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................... 3

STATEMENT OF FACTS .................................................................................................. 4

I.      The Arbitration Award And Judgment ................................................................... 4

II.     This Court Found PDVSA To Be Venezuela's Alter Ego In August 2018 And Authorized
        Attachment Of The PDVH Shares Accordingly. .................................................... 5

III.    Events Subsequent To This Court's August 2018 Alter Ego Decision In *Crystallex* ...................... 6

ARGUMENT ...................................................................................................................... 8

I.      The Court Should Grant Huntington Ingalls Relief Under 28 U.S.C. § 1610(c) Because A
        Reasonable Time Has Elapsed Since Entry Of Judgment. ...................................... 8

II.     A Writ Of Attachment Against PDVH Shares Owned By PDVSA Is Appropriate Because
        PDVSA Remains Venezuela's Alter Ego Under The Guaidó Government. ................... 9
        a.      Subsequent Events Since This Court's August 2018 Decision Should Not Cause
                The Court To Change Its Conclusion That PDVSA Is The Alter Ego Of The
                Venezuelan State ......................................................................................... 9
        b.      Used For Commercial Activity .................................................................... 16
        c.      The United States Statement of Interest In *Crystallex* Confirms The Continuing
                Alter Ego Relationship Between PDVSA And The Venezuelan State. ............ 16
        d.      Granting Huntington Ingalls's Motion Does Not Conflict With The United States
                Venezuela Sanctions Or Broader Foreign Policy Goals. ............................. 17

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    932 F.3d 126 (3d Cir. 2019), *cert. denied, Bolivarian Republic of Venez. v.*
    *Crystallex Int'l Corp.*, 206 L.Ed.2d 936 (2020) ................................................6, 16

*Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-cv-1082-LPS, 2019 U.S. Dist.
    LEXIS 214167, at *23 (D. Del. Dec. 12, 2019)....................................................9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    No. 1:17-mc-00151 (Dec. 12, 2019), D.I. 154.........................................................3

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), D.I. 212-1 ...........................17, 18

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    No. 16-cv-0661 (RC), 2017 U.S. Dist. LEXIS 221611 (D.D.C. Jun. 9, 2017) ....................5, 9

*Crystallex International Corporation v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380 (D. Del. 2018) ..................................................... *passim*

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983).......................................................................5, 6, 9, 15

*Jiménez v. Palacios*,
    No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288 (Ch. Aug. 2, 2019), *aff'd,*
    2020 Del. LEXIS 253 (Del. July 22, 2020) .............................................7, 8, 10, 11

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Bolivarian Republic*
    *of Venezuela*,
    No. 1:02-cv-00785-HSO-RHW, 2003 U.S. Dist. LEXIS 29844 (S.D. Miss.
    April 16, 2003)...............................................................................1

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*,
    No. 20-60347 (5th Cir.) ........................................................................5

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
    419 F. Supp. 3d 51 (D.D.C. 2019)...............................................................5

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
    No. 1:19-mc-00290 (D. Del. Dec. 23, 2019), D.I. 28.............................................6

*Petroleos De Venez. S.A. et al v. MUFG Union Bank, N.A. et al*,
    No. 1:19-cv-10023 (S.D.N.Y. June 15, 2020), D.I. 117.........................................13

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
  30 F.3d 148 (D.C. Cir. 1994) ................................................................1

**RULES**

Federal Rules of Civil Procedure Rule 69(a)(1) .........................................1

Local Rule 69.1 .............................................................................2

**STATUTES & REGULATIONS**

8 Del. C. § 169 ............................................................................3

8 Del. C. § 324(a) .........................................................................1

10 Del. C. § 5031 ..........................................................................1

9 U.S.C. §§ 9, 207, 302 and 304 ...........................................................2

9 U.S.C. § 301 .............................................................................2

28 U.S.C. § 1610(a) ........................................................................2

28 U.S.C. § 1610(c) ................................................................. *passim*

28 U.S.C. § 1963 .........................................................................2, 5

Executive Order No. 13850, 83 Fed. Reg. 55243, 55243–45 (Nov. 1, 2018) .............18

Executive Order No. 13857, 84 Fed. Reg. 509 (Jan. 25, 2019).........................17

Executive Order No. 13884, 84 Fed. Reg. 38843, 38843–45 (Aug. 5, 2019) ........17, 18

Foreign Sovereign Immunities Act........................................................6, 9

Foreign Sovereign Immunities Act 28 U.S.C. § 1603(a)....................................1

Foreign Sovereign Immunities Act Section 1610(a)(6)................................. *passim*

**TREATIES**

Inter–American Convention on International Commercial Arbitration [opened for
  signature Jan. 30,1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245] ....................1, 2

**OTHER AUTHORITIES**

"Frequently Asked Questions, Venezuela Sanctions," U.S. Department of the
  Treasury ...............................................................................18

Plaintiff and judgment creditor Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated ("Plaintiff" or "Huntington Ingalls"), respectfully submits this brief in support of its amended motion for an order authorizing the Clerk of the Court to issue a writ of attachment *fieri facias* ("*fi. fa.*") in accordance with Section 1610(a)(6) of the Foreign Sovereign Immunities Act ("FSIA"), Rule 69(a)(1) of the Federal Rules of Civil Procedure, and Sections 5031 (10 Del. C. § 5031) and 324 (8 Del. C. § 324(a)) of the Delaware Code as to the shares of PDV Holding, Inc. ("PDVH"), a Delaware corporation fully-owned by Petróleos de Venezuela S.A. ("PDVSA"), the state oil company and alter ego of judgment debtor the Bolivarian Republic of Venezuela ("Venezuela").

## INTRODUCTION

On June 4, 2020, the United States District Court for the Southern District of Mississippi entered a final judgment ("the Judgment") enforcing an international arbitration award ("the Award") rendered against the Venezuelan Ministry of Defense and in favor of Huntington Ingalls in the amount of $137,977,646.43.[1]   The Mississippi federal district court did so pursuant to Articles 4 and 5 of the Inter-American Convention on International Commercial Arbitration of

---

[1] The Award was issued on February 19, 2018 by an international arbitration tribunal seated in Brazil.  The dispute between Huntington Ingalls and Venezuela arose out of Venezuela's non-payment for services provided in repairing two Venezuelan warships.  As a matter of law, the Ministry of Defense *is* the Venezuelan State and *not* one of its "instrumentalities."  *See Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Bolivarian Republic of Venezuela*, No. 1:02-cv-00785-HSO-RHW, 2003 U.S. Dist. LEXIS 29844, at *3 (S.D. Miss. April 16, 2003) ("The Defendant Ministry of Defense of the Republic of Venezuela (herein, 'The Ministry') *is a foreign state* as defined by the Foreign Sovereign Immunities Act. 28 U.S.C. § 1603(a)." (emphasis added)).  *See also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994) ("armed forces are . . . as a rule so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state").

1975 and the Federal Arbitration Act, 9 U.S.C. §§ 9, 207, 302 and 304.[2]  Huntington Ingalls registered the Judgment in this Court pursuant to 28 U.S.C. § 1963 on July 31, 2020.  *See* D.I. 1. Because Venezuela continues to fail to pay the amount owed under the Judgment, Huntington Ingalls moved this Court on September 15, 2020: (1) to find that a sufficient and "reasonable" period of time has elapsed since entry of judgment within the meaning of 28 U.S.C. § 1610(c) such that Huntington Ingalls may now seek to attach assets of Venezuela present in Delaware pursuant to 28 U.S.C. § 1610(a); and (2) to specifically authorize Huntington Ingalls's attachment of the shares of PDVH which belong to Venezuela through its alter ego, PDVSA.  Huntington Ingalls thereafter provided notice of the Motion by mailing hard copies, along with the supporting memorandum and exhibits, D.I. 3–5, via certified mail to individuals representing garnishee PDVH, debtor Venezuela, as well as interested party PDVSA. *See* D.I. 5, ¶ 3. On January 5, 2021, after no response from any party, Huntington Ingalls filed a letter requesting the Court grant its pending motion.  *See* D.I. 12.  PDVH responded the next day, arguing that it was a non-party and that service was not effective.  *See* D.I. 14.  On January 29, 2021, the Court held in an oral order that it had subject matter jurisdiction and that prior service on Venezuela from the underlying proceedings in the Southern District of Mississippi remains effective.  D.I. 17.  Huntington Ingalls and Venezuela then filed a joint status report on February 5, 2021, requesting a new briefing schedule.  D.I. 22. The Court granted the parties' request, allowing Huntington Ingalls to file this Amended Motion for a Writ of Attachment *Fieri Facias*.  D.I. 23.[3]

---

[2] *See* Inter–American Convention on International Commercial Arbitration [opened for signature Jan. 30,1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245], (reprinted after 9 U.S.C. § 301).

[3] In accordance with Local Rule 69.1, Huntington Ingalls submits a proposed writ of attachment *fieri facias*, as well as a praecipe, with this motion. *See* Second Yanos Decl. Exs. 1, 2. References to "Second Yanos Decl. Ex. [_]" are to the exhibits attached to the supporting Declaration of

## SUMMARY OF ARGUMENT

The question before the Court is whether PDVSA is Venezuela's alter ego, such that PDVSA's assets in the United States may be deemed commercial assets of Venezuela held through its alter ego and thus subject to Huntington Ingalls's attachment.[4]

1.    The Court has reached this conclusion before.  In August of 2018, it found that PDVSA was the alter ego of Venezuela and authorized attachment of PDVH's shares in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 391 (D. Del. 2018).  Subsequently, in an Order dated December 12, 2019, the Court declined to give collateral estoppel effect to its alter ego finding for the benefit of other judgment creditors of Venezuela, citing the potential effect of intervening changes in circumstances on its alter ego analysis, including the United States' decision in January of 2019 to transfer its recognition of Venezuela's legitimate government from that headed by Mr. Nicolás Maduro to that led by Mr. Juan Guaidó.  *See* Memorandum Order Regarding Pending Motions and Stay, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151 (Dec. 12, 2019), D.I. 154 at 13–17.

2.    Despite that caution, for the reasons set out below and in the supporting expert report of Professor Manuel Gomez ("Gomez Report") filed herewith, this Court's original conclusion on the alter ego issue remains correct today.  Mr. Guaidó's government treats PDVSA as a part of the Venezuelan State and uses its assets in commerce no less than Mr. Maduro's regime did (and, though no longer recognized as the legitimate government by the United States, continues to do). Huntington Ingalls should therefore be allowed to attach PDVH's shares.

---

Alexander A. Yanos, dated February 19, 2021, which Huntington Ingalls attaches to this amended motion.

[4] PDVH's shares are located in Delaware as a matter of law.  *See* 8 Del. C. § 169 ("For . . . purposes of . . . attachment [and] garnishment . . . the situs of the ownership of the capital stock of all corporations existing under the laws of this State . . . shall be regarded as in this State.").

3.      Otherwise, as no other comparable commercial assets of Venezuela have been identified for attachment in the United States, to deny Huntington Ingalls the attachment it seeks—and thus the opportunity to participate in any prospective auction of PDVH shares under the auspices of this Court assuming appropriate licenses from the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") are received—would leave Huntington Ingalls without an effective remedy and work unjustifiable discrimination among Venezuela's judgment creditors.

4.      Huntington Ingalls has applied for a license from OFAC for authorization to effectuate the attachment of the PDVH shares held by PDVSA in this District.  That application is currently pending and Huntington Ingalls will keep the Court advised of all developments in this regard.

## STATEMENT OF FACTS

### I.      The Arbitration Award And Judgment

On February 19, 2018, an arbitral tribunal (the "Tribunal") issued the Award against Venezuela and in favor of Huntington Ingalls in the net amount of US\$ 128,862,457.27 not including post-Award interest.  *See* Memorandum Opinion and Order Granting Plaintiff Northrop Grumman Ship Systems, Inc.'s Motion for Recognition and Execution of Arbitration Award, *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.* No. 1:02-cv-00785-HSO-RHW (Mar. 31, 2020) (Second Yanos Decl. Ex. 3) at 7.

On June 26, 2019, Huntington Ingalls filed a Motion to Recognize and Execute the Award in the Southern District of Mississippi.  *Id.* at 8–9.  The Mississippi federal district court granted Huntington Ingalls's Motion on March 31, 2020, in an opinion and order that rejected Venezuela's argument that the Tribunal had acted beyond its authority when it determined that Rio de Janeiro should serve as the arbitral seat.  *See id.* at 12–15.  The Mississippi federal district court entered

Judgment on June 4, 2020 in the amount of $137,977,646.43.[5]  D.I. 1.  Then, on July 23, 2020, the Mississippi federal district court granted Huntington Ingalls' Motion for Relief Pursuant to 28 U.S.C. § 1963, finding that Huntington Ingalls had shown good cause to register the Judgment in this district during the pendency of Venezuela's appeal.  *See* Order Granting In Part And Denying In Part Without Prejudice Plaintiff's Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.* No. 1:02-cv-00785-HSO-RHW (July 23, 2020) (Second Yanos Decl. Ex. 4).  The Mississippi federal district court ruled that any determination about timing of the attachment of assets pursuant to § 1610(c) should be made by this Court.  *See id.* at 5–6.[6]  Huntington Ingalls then registered the Judgment with this Court pursuant to 28 U.S.C. § 1963 on July 31, 2020.  *See* D.I. 1.

## II.     This Court Found PDVSA To Be Venezuela's Alter Ego In August 2018 And Authorized Attachment Of The PDVH Shares Accordingly.

Huntington Ingalls is not the first of Venezuela's judgment creditors to appear before this Court.  On June 19, 2017, Crystallex International Corp. ("Crystallex") registered a judgment from the United States District court for the District of Columbia based on another international arbitration award.  On August 9, 2018, this Court found that PDVSA was Venezuela's alter ego. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380, 391 (D. Del. 2018) (applying the test for setting aside the presumption of separateness between a State and its instrumentality set forth in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*,

---

[5] Venezuela has since appealed the district court's order.  *See Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*, No. 20-60347 (5th Circ.).  In doing so, Venezuela did not file a supersedeas bond.  Second Yanos Decl. ¶ 7.

[6] In other cases, the "reasonable time" inquiry under 28 U.S.C. 1610(c) has been decided by the court whose judgment is to be enforced.  *See, e.g., Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 16-cv-0661 (RC), 2017 U.S. Dist. LEXIS 221611, at *1 (D.D.C. Jun. 9, 2017); *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, 419 F. Supp. 3d 51, 53 (D.D.C. 2019).

462 U.S. 611, 627 (1983) ("*Bancec*")).  The record in *Crystallex* proved that the Venezuelan State exerted pervasive control over PDVSA, "including its day-to-day operations" thus "rendering PDVSA the alter ego of Venezuela."  *Id.* at 399.  Thus, Crystallex, as Venezuela's judgment creditor, could attach the PDVH shares located in this District consistent with the FSIA because they were the property of Venezuela's alter ego—and thus of Venezuela itself—used in commerce.[7]  *See id.* at 418 ("As Crystallex states, 'it is difficult to imagine property with more of a commercial use than shares of a Delaware for-profit corporation that itself owns, through an intermediate holding company, a multi-billion dollar Delaware petroleum corporation. . .'").  The Third Circuit affirmed and the Supreme Court denied certiorari in May 2020.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126, 150 (3d Cir. 2019), *cert. denied*, *Bolivarian Republic of Venez. v. Crystallex Int'l Corp.*, 206 L.Ed.2d 936 (2020).

### III.   Events Subsequent To This Court's August 2018 Alter Ego Decision In *Crystallex*

In the months immediately following this Court's alter ego decision in *Crystallex*, the relationship between Venezuela and PDVSA continued unchanged.  The then-recognized Venezuelan government of Nicolás Maduro continued to exercise complete control over PDVSA,

---

[7] In finding PDVSA to be Venezuela's alter ego, this Court considered a voluminous evidentiary record proving Venezuela's pervasive use of PDVSA and its assets as simply an extension of the state itself.  Among other things, this Court found the *Bancec* standard satisfied where the evidence showed that (i) Venezuela used PDVSA's property as its own; (ii) ignored PDVSA's formally separate status; (iii) subjected PDVSA to close political control; (iv) required high level governmental approvals for routine business decisions; and (v) caused PDVSA to act directly as a policy arm of the State.  *See generally Crystallex Int'l Corp.*, 333 F. Supp. 3d at 402–03.  To the extent that the relationship between the Maduro regime and those parts of PDVSA that it still effectively controls remains relevant, there has been no change in the tenor of that relationship that would warrant a conclusion different from that which this Court reached in August of 2018.  *See infra* n. 8.  *See also* Memorandum of Law in Support of OIEG's Motion for Reconsideration, *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, No. 1:19-mc-00290 (D. Del. Dec. 23, 2019), D.I. 28 at 4–6.

among other things appointing military commanders and Venezuela's Minister of Oil to the PDVSA board by decree and subjecting the company to military control.[8]

In January of 2019, however, Venezuela's National Assembly rejected Nicolás Maduro's claim to reelection, declared the election results illegitimate and instead named opposition leader Juan Guaidó as interim president.[9]  The United States recognized Mr. Guaidó's government as the legitimate government of Venezuela on January 23, 2019.[10]

Unable to control territory in Venezuela, Mr. Guaidó's administration has prioritized external matters, including control of overseas PDVSA entities (in particular those in the United States) and attempting to negotiate the restructuring of Venezuela's debts—including adverse arbitration awards.  In connection with the latter goal, Mr. Guaidó's government has, as a matter of policy, treated PDVSA's debt obligations as equivalent to those of the Venezuelan State.[11]

As part of this program, the Guaidó government in February of 2019 appointed a parallel *ad hoc* board of directors of PDVSA.  *See Jiménez*, 2019 Del. Ch. LEXIS 288, at *12.  As set out

---

[8] *See Jiménez v. Palacios*, No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288, at *8 n.7 (Ch. Aug. 2, 2019), *aff'd,* 2020 Del. LEXIS 253 (Del. July 22, 2020) (listing Mr. Maduro's October 2018 appointments).  *See also* Alexandra Ulmer & Marianna Parraga, "Oil output goes AWOL in Venezuela as soldiers run PDVSA," REUTERS (Dec. 26, 2018) (Second Yanos Decl. Ex. 5); "Minister Quevedo Inspected Full Operability of VHICOA", PETROLEOS DE VENEZUELA, S.A. (Oct. 28, 2019) (showing Mr. Quevedo as both a minister and president of PDVSA) (Second Yanos Decl. Ex. 6); "Venezuela names El Aissami to PDVSA board of directors," REUTERS (Sept. 9, 2018) (Second Yanos Decl. Ex. 7); Joshua Goodman "Tareck El Aissami, ICE '10 most-wanted fugitive' tapped to revamp Venezuela's oil industry," ASSOCIATED PRESS (Apr. 27, 2020) (Second Yanos Decl. Ex. 8).

[9] *See generally* Ana Vanessa Herrero, "After U.S. Backs Juan Guaidó as Venezuela's Leader, Maduro Cuts Ties," NEW YORK TIMES (Jan. 23, 2019) (Second Yanos Decl. Ex. 9).

[10] Statement Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela, THE WHITE HOUSE (Jan. 23, 2019) (Second Yanos Decl. Ex. 10).

[11] Ben Bartenstein, "U.S. Shields Citgo From Creditors in Win for Venezuela's Guaidó," BLOOMBERG (Oct. 24, 2019) (Second Yanos Decl. Ex. 11).

in the Gomez Report, it did so pursuant to an emergency "Statute to Govern the Transition Toward Democracy to Reestablish the Validity of the Constitution of the Bolivarian Republic of Venezuela" ("Transition Statute").  Gomez Report ¶18.

That new Guaidó-appointed board in turn appointed new directors for three Delaware entities: PDVH, Citgo Holding Inc., and Citgo Petroleum Corp.  *See Jiménez*, 2019 Del. Ch. LEXIS 288 at *33–34 (U.S. Courts must recognize Mr. Guaidó's appointed ad hoc board members as the rightful members of the boards for PDVSA, PDVH, Citgo Holding Inc., and Citgo Petroleum Corp).  Mr. Guaidó constituted the *ad hoc* board with the expressed goal of "recover[ing] and protect[ing] the nation's assets abroad."[12]  At present, the *ad hoc* board appointed by Mr. Guaidó controls elements of PDVSA and PDVSA assets outside the physical territory of Venezuela, regularly reporting its operations to the National Assembly.  *Id.*  Indeed, Article 36 of the Transition Statute, precludes the disposal of any funds belonging to PDVSA or any other state-owned entity until after the Maduro regime relinquishes power without express authorization from the National Assembly.  *See* Gomez Report ¶ 22.

## ARGUMENT

**I.**   **The Court Should Grant Huntington Ingalls Relief Under 28 U.S.C. § 1610(c) Because A Reasonable Time Has Elapsed Since Entry Of Judgment.**

In the eleven months since the Mississippi federal district court entered the judgment, Venezuela has not taken any action to pay Huntington Ingalls.  Consistent with the practice of this and other federal courts in similar cases, a "reasonable" period of time within the meaning of 28 U.S.C. § 1610(c) has therefore elapsed and Huntington Ingalls should be allowed to take active

---

[12] "Guaidó on recovered assets: 'Our commitment is to Venezuelans and transparency,'" Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (Aug. 7, 2020) (Second Yanos Decl. Ex. 12).

measures to collect on its judgment Huntington Ingalls requests that this Court find that a reasonable amount of time has elapsed since entry of the Judgment and allow Huntington Ingalls to seek attachment of the PDVH shares in this District in satisfaction of the Judgment for those reasons stated in its initial motion and supporting memorandum. *See* D.I. 3, 4. *See also Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 2017 U.S. Dist. LEXIS 221611, at *2–3 (finding that "two months is a reasonable time").

## II.   A Writ Of Attachment Against PDVH Shares Owned By PDVSA Is Appropriate Because PDVSA Remains Venezuela's Alter Ego Under The Guaidó Government.

Section 1610(a)(6) of the FSIA provides that a foreign State's property used for commercial activity in the United States may be attached in aid of execution of a judgment based on an order confirming an arbitral award rendered against the foreign state. *See* 28 U.S.C. § 1610(a)(6). Huntington Ingalls has registered a judgment in this District from a United States court confirming an arbitral award rendered against Venezuela. *See* D.I. 1. Venezuela, through its alter ego PDVSA, owns shares in PDVH located in this District and exercises its ownership of those shares in commerce. As such, Venezuela's shares in PDVH are not immune to a writ of attachment for the fulfillment of the Award.

### a.   Subsequent Events Since This Court's August 2018 Decision Should Not Cause The Court To Change Its Conclusion That PDVSA Is The Alter Ego Of The Venezuelan State

Even when the Court looks to events subsequent to the *Crystallex* alter ego finding— particularly to the impact of the United States' recognition of Mr. Guaidó's government—the result is the same.[13] Venezuela continues to exert extensive control over PDVSA. *See Bancec*, 462 U.S.

---

[13] The Court's alter ego holding from Crystallex must be at least determinative up to August of 2018. *Cf. Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167, at *23 (D. Del. Dec. 12, 2019) ("[A]ny creditor may be able to find support (perhaps strong support) in the record created in the Crystallex Asset Proceeding and the finding reached (and affirmed) [there]").

at 629 ("[W]here a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created, . . . one may be held liable for the actions of the other).

As a preliminary matter, between August 2018 and January 2019, the United States continued to recognize Mr. Maduro as the legitimate president of Venezuela.  Over this period, the Maduro regime's treatment of PDVSA as coterminous with the Venezuelan State continued unmistakably and unabated.  For example, in October of 2018, Maduro named General Manuel Salvador Quevedo Fernández, a career military officer and then-Minister of Oil as president of the board of PDVSA and Tareck El Aissami, the then Minister of Industry and National Production, as External Director of PDVSA.  *Jiménez*, 2019 Del. Ch. LEXIS 288, at *8 n.7.[14]  In the later part of 2018, Mr. Quevedo imposed a military regime on PDVSA, arresting workers for operational mistakes and deploying active military personnel aboard tankers.[15]  In short, the attitude of the Maduro regime towards PDVSA during this period was no different than prior to this Court's alter ego decision in *Crystallex*, and there is no reason to imagine that this Court's decision would have been different had it come a few months later.

Thereafter, neither does the United States' recognition of Mr. Guaidó as interim president in January of 2019, nor the attitude of his government toward PDVSA and its United States entities, warrant a change from this Court's finding that PDVSA is the Venezuelan State's alter ego.

**1.  *The Guaidó Government deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies*.**  To begin with, Mr. Guaidó's government has continued the government tradition of appointing PDVSA board positions.  On February 8, 2019, within in a month of declaring himself interim president on January 23, 2019,

---

[14] *See also supra* n.8.

[15] Second Yanos Decl. Ex. 5.

Mr. Guaidó consolidated power by appointing a new, *ad hoc* board of directors to PDVSA pursuant to special powers granted to him by Venezuela's National Assembly under the Transition Statute. *See Jiménez*, 2019 Del. Ch. LEXIS 288, at *12; Gomez Report ¶¶ 18–19.  As discussed in more detail below, the Guaidó administration has involved itself in litigation surrounding PDVSA bonds leveraging Citgo.[16]  Furthermore, PDVSA regularly presents its activities before the National Assembly.  For example, in August of 2020, the President of the *ad hoc* PDVSA board appointed by Mr. Guaidó, reported to the National Assembly's permanent committees on Energy and Petroleum, Finance and Economic Development, and Comptrollership.[17]  During that report, which was broadcast live to all Venezuelans, Mr. Pacheco announced that the *ad hoc* board appointed by President Guaidó had taken "***total control***" of PDV Holding, Inc., CITGO Holding, Inc, and CITGO Petroleum Corporation.  *Id.* (emphasis added).  In fact, the National Assembly website frequently updates the status of both PDVSA and its subsidiary, CITGO.[18]

   **2.   *The Guaidó Government uses PDVSA as the government's asset.***  While Mr. Guaidó's government does not actually have the physical ability to control as much of PDVSA within Venezuela as Mr. Maduro's, following Mr. Guaidó's rise as president, his government has continued to identify PDVSA as part and parcel of the Venezuelan State.  *See Crystallex*, 333 F. Supp. 3d at 401 (determining extensive control in part on when a sovereign "uses the

---

[16] "U.S. Treasury Department Extends Protection to Citgo from PDVSA 2020 Bonds (Press Release)," Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (July 15, 2020) (Second Yanos Decl. Ex. 21) (noting that both the Office of the Special Prosecutor, as well as the Venezuelan Embassy in the United States, have taken action to invalidate PDVSA bonds initially negotiated by the Maduro regime).

[17] "PDVSA's ad hoc Board of Directors highlights the transparent management of its subsidiaries in the U.S.," Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (Aug. 5, 2020) (Second Yanos Decl. Ex. 17).

[18] *See, e.g.*, Second Yanos Decl. Exs. 12, 15, 17, 20, 21, 22.

instrumentality's property as its own").  For example, Mr. Guaidó's administration characterized the appointment of an *ad hoc* board as part of "taking progressive and orderly control of the ***assets of our Republic abroad***" in order to "speed up the political transition."[19]  Further, in a statement on the National Assembly website, Mr. Guaidó's government describes CITGO (which is a subsidiary of PDVH) as "***one of the most valuable assets of the nation***."[20]  If CITGO is an "asset of the nation," it follows that the shares of its Delaware parent company must be as well.  Similarly, a statement by Venezuela's ambassador to the United States posted on the National Assembly website described U.S. Treasury regulations that, in Venezuela's view, work to shield against attachment of CITGO assets as a diplomatic "achievement of the interim government of President Juan Guaidó to permanently secure the ***assets of the Venezuelan state***."[21]  Huntington Ingalls, of course, is a judgment creditor "of the Venezuelan State."

Mr. Guaidó's approach to restructuring Venezuela's debt further confirms his government's identification of PDVSA with the State.  In this crucial context, Mr. Guaidó's government makes no meaningful distinction between the assets and liabilities of the Venezuelan State and those of PDVSA.  Instead, Mr. Guaidó's government has called for "equal treatment" of all claims subject to renegotiation, no matter "the identity of the public sector obligor."  *See* Second Yanos Decl. Ex. 13.  In its position on renegotiation of Venezuela's sovereign debt, Mr.

---

[19] Renzo Pipoli, "Venezuela's Guaidó to name new boards of PDVSA and Citgo," *UPI* (Jan. 29, 2019) (emphasis added) (Second Yanos Decl. Ex. 14).

[20] Second Yanos Decl. Ex. 12.

[21] "Venezuelan Interim Government Achieves Strengthening of U.S. Treasury Measures for the Protection of CITGO and Other Assets," Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (Nov. 20, 2019) (emphasis added) (Second Yanos Decl. Ex. 15).

Guaidó's government defines "public sector obligator" as "the Republic, PDVSA or another public sector entity." *Id.*

Mr. Guaidó's government is also seeking to invalidate bonds issued by Mr. Maduro's government through litigation in the Southern District of New York. In doing so, PDVSA itself has emphasized the control of the government over its operations and defined its constitutional role to "manage the [Venezuelan] oil industry," including CITGO—the "'crown jewel' and most economically and strategically important foreign asset of national [Venezuelan] public interest." *See* PDVSA Memorandum of Law in Support of Motion for Summary Judgment, *Petroleos De Venez. S.A. et al v. MUFG Union Bank, N.A. et al*, No. 1:19-cv-10023 (S.D.N.Y. June 15, 2020), D.I. 117, at 31 (Second Yanos Decl. Ex. 16); *Id.* at 30 n. 84 (stating that "[t]here is no dispute that PDVSA and PDVSA Petróleo, which are 'attached' to (and thus controlled by) Venezuela's Ministry of Petroleum and Mining, are part of the National Public Administration of the Venezuelan Republic").[22]

**3.** *The Guaidó Government requires the instrumentality to obtain approvals for ordinary business decisions from a political actor.* The Guaidó administration's policy of "total control" over PDVSA is reflected in the Transition Statute. As Professor Gomez explains, Article 34 of the Transition Statute expressly bypasses the ordinary corporate regime of PDVSA in order to empower Mr. Guaidó to appoint a special Board of Directors for PDVSA for the explicit purpose

---

[22] *See also* "NY District Court responds favorably to the appeal of the Interim Government with a ruling that prevents holders of the PDVSA 2020 Bond from acting against CITGO's Assets," Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (Dec. 29, 2020) (Second Yanos Decl Ex 21). (Venezuelan Ambassador Carlos Vecchio stated, "It is clear that we have done and will continue to do EVERYTHING to protect and preserve Citgo for Venezuelans."); "President (e) Guaidó after court ruling on PDVSA 2020 bonds: 'CITGO remains protected,'" Republica Bolivariana de Venezuela, Asamblea Nacional, CENTRO DE COMUNICACIÓN NACIONAL (Oct. 17, 2019) (Second Yanos Decl Ex 22) (Mr. Guaidó referring to the protection of Citgo as the protection of "the country's assets").

of allowing it to exercise its rights as PDV Holding's shareholder, including the selection of board members to PDV Holding, Citgo, and other affiliates.  Gomez Report ¶¶ 18, 21.   Further, on April 2, 2019, the National Assembly enacted an "Accord to Expand the Powers Vested and the Number of Ad-Hoc Board Members of PDVSA" that further expanded Mr. Guaidó's controls over PDVSA by allowing him to expand the authority of PDVSA's board by special decree, and by suspending all rights and authorities otherwise vested in PDVSA's the Shareholders' Meeting, the Board of Directors, and the Presidency of PDVSA and its affiliates.  *See* Gomez Report ¶ 20.  This law also suspended any functions given to the Minister of Hydrocarbons and any other government official, branch or agency related to PDVSA, which existed by or was given any functions after January 10, 2019, replacing the previous legal framework for PDVSA's governance with "total control" of Mr. Guaidó's government.[23]

Under this new legal framework, it is the position of the Guaidó administration that every PDVSA contract with a foreign national must be approved by the legislature consistent with Article 36 of the Transition Statute which precludes the disposal of any funds belonging to PDVSA or any other state-owned entity until after the Maduro regime relinquishes power without express authorization from the National Assembly.  *See* Gomez Report ¶ 22.  Even to be able to carry out an otherwise ordinary business decision such as paying its own legal fees, PDVSA had to obtain express authorization from Guaidó's National Assembly in 2019.[24]  The Guaidó administration took the same stance when it objected to the Maduro administration's sale of PDVSA stake in Swedish refiner, Nynas AB, with the National Assembly's energy committee considering the deal

---

[23] *See, e.g.*, Second Yanos Decl. Exs. 12, 15, 17, 20, 21, 22.

[24] *See* Gomez Report ¶ 22.

null, "as it was not approved by congress."[25]  *See also* Second Yanos Decl. Ex. 16 at 30 (seeking to avoid obligations to PDVSA bondholders by arguing that all of PDVSA's contracts required prior approval by Venezuela's National Assembly).  In short, the Venezuelan State's position is that PDVSA's borrowing is the State's borrowing and its business decisions are likewise those of the Venezuelan State.  This is precisely the kind of extensive control contemplated by the Supreme Court in *Bancec* and, though played in a different key by a new government, that was the foundation for this Court's earlier alter ego finding.  *See Crystallex*, 333 F. Supp. 3d at 406–12.

*4.  The Guaidó Government ignores the instrumentality's separate status or ordinary corporate formalities and causes it to act directly at the instruction of the State.*  Through the framework of the Transition Statute the Guaidó administration has not only continued the sublimation of PDVSA into the State, but formally intensified it.  As Professor Gomez explains, Article 34 of the Transition Statute *bypassed* the ordinary corporate regime of PDVSA specifically in order to allow Mr. Guaidó's handpicked board of PDVSA directors to exercise control over PDV Holdings, while overriding all other potentially applicable provisions of Venezuelan law, such that Mr. Guaidó and his appointees have, as a matter of law, been given unfettered authority over control over PDVSA and PDV Holding.  *See* Gomez Report ¶ 19 .  The Transition Statute's provision for assembly of routine business decisions by the National Assembly only confirms the State's direct "total control" over PDVSA.  *See* Gomez Report ¶ 12.  Indeed, the ***Guaidó Government*** has established a special fund derived from assets in the United States previously

---

[25] Luc Cohen, "Venezuela's Congress to voice concern to U.S. over Nynas sanctions removal," REUTERS (May 14, 2020) (Second Yanos Decl Ex 23).

controlled by the Maduro Government, earmarked for use in litigation involving PDVSA, such as this case.  *See* Gomez Report ¶ 22.[26]

### b.  Used For Commercial Activity

Not only has the Guaidó administration maintained total control over PDVSA, the property at issue—stock in PDVH—continues to be used for a commercial activity and is therefore not immune from attachment.  *See* 28 U.S.C. § 1610(a)(6).  Mr. Guaidó's *ad hoc* PDVSA board continues to use its PDVH shares to run its business.  The Third Circuit confirmed this point in its decision affirming this Court's alter ego finding from *Crystallex*, which among other things noted that "President Guaidó in February 2019 appointed an *ad hoc* administrative board to represent PDVSA in its capacity as sole shareholder of PDVH for appointing a new board of directors of that entity."  *See Crystallex Int'l Corp.*, 932 F.3d at 151.  As a result, "the shares continue to be used in commerce."  *Id.*  Venezuela has since exercised that same commercial power when Mr. Guaidó appointed additional directors to both PDVSA's and CITGO's board in summer of 2020.[27]  In their own 2020 Bond proceeding briefings, Mr. Guaidó's PDVSA board has confirmed that it continues to manage subsidiaries though PDVH.  *See* Second Yanos Decl. Ex. 16 at 31.

### c.  The United States Statement of Interest In *Crystallex* Confirms The Continuing Alter Ego Relationship Between PDVSA And The Venezuelan State.

---

[26] Indeed, Venezuela and PDVSA interchangeably use the same lawyers.  PDVSA's counsel in this case currently represent Venezuela itself in two proceedings before the United States District Court for the District of Columbia, in which the undersigned represented other creditors.  *See Koch Minerals Sarl et al v. Bolivarian Republic of Venezuela*, No. 1:17-cv-02559-ZMF (D.D.C.) and *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, No. 1:20-cv-00129-RC (D.D.C.).

[27] "Venezuela's opposition names new members to PDVSA ad-hoc board," REUTERS (June 30, 2020) (Second Yanos Decl. Ex. 18); "Venezuela's Guaidó names Citgo chief executive to board," REUTERS (July 9, 2020) (Second Yanos Decl. Ex. 24).

Setting to one side the United States' resistance to Crystallex's demands that it be allowed to conduct a speedy auction of PDVH's shares, the submissions of the United States before this Court and in the broader policy arena confirm that the United States itself recognizes the continuing and fundamental identity of PDVSA with the Venezuelan State.

In the Statement of Interest filed in the *Crystallex* case, the United States admits that its goal in calling for restraint as to any auction of PDVH shares is to forestall the perception that the Guaidó administration cannot protect ***Venezuela's*** assets. Statement of Interest of the United States of America, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), D.I. 212-1 at 3; Reply Brief In Support of the Statement of Interest of the United States, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), D.I. 220 at 8 ("Should these assets be advertised for public auction at this time, the Venezuelan people would seriously question the interim government's ability to protect ***the nation's assets***, thereby weakening it and U.S. policy in Venezuela today." (emphasis added)). The same understanding is clearly reflected in the United States' sanctions applicable to Venezuela, which define "Government of Venezuela" to include PDVSA. *See*, *e.g.*, Executive Order No. 13857, 84 Fed. Reg. 509, 509–10 (Jan. 25, 2019) (amending the definition of "Government of Venezuela" in prior Executive Orders *explicitly to include PDVSA*) and Executive Order No. 13884, 84 Fed. Reg. 38843, 38843–45 (Aug. 5, 2019) (blocking the property of "the Government of Venezuela," which includes PDVSA). Where the Executive Branch, with its foreign policy and intelligence apparatus, has equated PDVSA with the Venezuelan State, this Court should feel comfortable drawing the same conclusion.

**d. Granting Huntington Ingalls's Motion Does Not Conflict With The United States Venezuela Sanctions Or Broader Foreign Policy Goals.**

Both this Court and the Third Circuit have previously ruled that United States sanctions targeting the now-unrecognized Maduro regime and also impacting PDVSA's assets in the United States did not preclude the issuance of a writ of attachment in August of 2018.  Although the U.S. Venezuela sanctions have evolved since that time, *authorizing* the attachment Huntington Ingalls seeks would not fall afoul of those regulations.[28]

OFAC has explicitly advised that a specific license "is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program, or for a U.S. court or its personnel, to hear such a case."[29] According to this guidance, a specific license would be required for the "purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property." *Id.*  OFAC defines such measures to include attaching blocked property. *See id.*

Consistent with this guidance, Huntington Ingalls has applied to OFAC for a license authorizing its attachment of PDVH shares and will keep the Court advised its status.

Otherwise, the United States' Statement of Interest is not especially germane to Huntington Ingalls's present motion.  To the extent that the United States urges the Court to pause proceedings until OFAC approves Crystallex's application for a specific license to auction attached Venezuelan assets, *see* Statement of Interest of the United States of America, No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), D.I. 212 at 8–11, Huntington Ingalls takes no position.  Huntington Ingalls seeks

---

[28] *See* Executive Order No. 13850, 83 Fed. Reg. 55243, 55243–45 (Nov. 1, 2018), which blocks property and interests in property from transfer or dealing with various persons with dealings within Venezuela; Executive Order No. 13884, 84 Fed. Reg. 38843, 38843–45 (Aug. 5, 2019), which, in relevant part, blocks property of the Venezuelan Government (including PDVSA) from being "transferred, paid, exported, withdrawn, or otherwise dealt in" and Executive Order No. 13857, 84 Fed. Reg. 509 (Jan. 25, 2019).

[29] *See* "Frequently Asked Questions, Venezuela Sanctions," U.S. Department of the Treasury (Second Yanos Decl. Ex. 19) at 35 (FAQ No. 808).

only to be in a position to recover from any eventual auction of PDVH's shares as a judgment creditor of Venezuela's.   Huntington Ingalls' motion thus does not implicate the concerns expressed in the United States' Statement of Interest.   In its own words:

> the United States has not argued that its foreign policy interests "warrant[] stripping Crystallex's lien on PDVH," or otherwise requested deference regarding the legal questions surrounding the Rule 60(b) motion. Instead, the United States requests that the Court give weight to U.S. foreign policy concerns when considering ***whether to take further steps*** toward a forced sale at this time.

Reply Brief In Support of the Statement of Interest of the United States, No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), at D.I. 220 at 2 (citations omitted and emphasis added).  By its present motion, however, Huntington Ingalls seeks not to take "further steps toward a forced sale," but only to reach the same stage that Crystallex *has already reached*.

## CONCLUSION

For the above reasons, Huntington Ingalls respectfully requests that this Court enter an order (1) finding that a reasonable period of time has elapsed since judgment was entered allowing a writ of attachment pursuant to 28 U.S.C. § 1610(c); and (2) authorizing the Clerk of the Court to issue the proposed writ of attachment *fi. fa.* to PDVH, authorizing the U.S. Marshals Service to serve the writ, and granting such other and further relief as the Court deems just and proper.

DATED: February 19, 2021                          Respectfully submitted:

OF COUNSEL:
Alexander A. Yanos *pro hac vice*
Carlos Ramos-Mrosovsky *pro hac vice*
Rajat Ranna *pro hac vice*
Robert Poole *pro hac vice*
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com
robert.poole@alston.com

/s/ Peter J. Keane_____
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski, Stang, Ziehl & Jones, LLP
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for Plaintiff*