# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 19-mc-290-LPS |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 20-mc-257-LPS |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD., <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 21-mc-46-LPS |
| RUSORO MINING LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 21-mc-481-LPS |

| | |
|---|---|
| KOCH MINERALS SÀRL, KOCH NITROGEN INTERNATIONAL SÀRL,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　Defendant. | Case No. 22-mc-156-LPS |
| GOLD RESERVE INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　Defendant. | Case No. 22-mc-453-LPS |

**PETROLEOS DE VENEZUELA, S.A.'S MOTION FOR AN ORDER RECOGNIZING THAT THE COURT HAS BEEN DIVESTED OF JURISDICTION OR ALTERNATIVELY FOR AN UNCONDITIONAL STAY PENDING APPEAL**

　　　　Petróleos de Venezuela, S.A. ("PDVSA") respectfully moves for an order recognizing that this Court has been divested of jurisdiction with respect to any and all parts of the action against PDVSA in the above-captioned cases or, alternatively, for an unconditional stay pending final resolution of PDVSA's interlocutory appeals. Because PDVSA is filing this motion pursuant to the Court's instruction at the March 30, 2023 status conference held in the presence of counsel for all the parties, including Delaware counsel, and the parties indicated their opposition to any stay of proceedings, L.R. 7.1.1 has been satisfied.

2

**NATURE AND STAGE OF THE PROCEEDINGS**

On March 23, 2023, this Court entered an Opinion and Order (the "March 23 Order") denying PDVSA's motion to dismiss for lack of subject matter jurisdiction on sovereign immunity grounds under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.*, and conditionally granting writs of attachment *fieri facias* in the cases filed by Plaintiffs (i) OI European Group B.V. ("OIEG"), No. 1:19-mc-00290, D.I. 131, 132; (ii) Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated ("Huntington Ingalls"), No. 1:20-mc-00257, D.I. 78, 79; (iii) ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (collectively, "ACL"), No. 1:21-mc-00046, D.I. 56, 57; (iv) Rusoro Mining Limited ("Rusoro"), No. 1:21-mc-00481, D.I. 43, 44 (collectively, the "Decided Cases").

Pursuant to the Court's March 23 Order, the parties in the Decided Cases, along with Plaintiffs Koch Minerals Sàrl and Koch Nitrogen International Sàrl (collectively, "Koch"), No. 1:22-mc-00156, and Gold Reserve Inc. ("Gold Reserve"), No. 1:22-mc-00453, met and conferred and, on March 28, 2023, submitted a joint status report in the above-captioned cases. *See, e.g.*, *OIEG*, No. 1:19-mc-00290, D.I. 133. In that report, PDVSA indicated that it would be filing stipulated proposed orders with Koch and Gold Reserve based on the March 23 Decision. *Id*. at 10-11. PDVSA also took the position that it was entitled to take an immediate appeal from the March 23 Order and that, once PDVSA filed its notices of appeal, the Court would be divested of jurisdiction to take any further actions in these cases until the Third Circuit ruled on PDVSA's appeals. *Id*. at 8-9. The Bolivarian Republic of Venezuela concurred with PDVSA's position. *Id*. at 11.

OIEG, Huntington Ingalls, Rusoro and Koch took the position that the Court should add their judgments as "Additional Judgments" under the *Sixth Revised Proposed Order (A)*

3

*Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (the "Sale Procedures Order"), entered in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-151 (D. Del. Oct. 11, 2022), D.I. 481. *Id*. at 3-7. None of the plaintiffs objected to PDVSA's right to take an immediate appeal or its invocation of the divestiture rule.

The Court held a status conference in the above-captioned cases on March 30, 2023. PDVSA emphasized its position that, once it filed its notices of appeal, the Court would be automatically divested of jurisdiction to take any further actions against PDVSA. Tr. 21:14-23:13. While certain plaintiffs asked the Court to add their judgments as "Additional Judgments" under the Sales Procedures Order, none of the plaintiffs objected to PDVSA's right to take an immediate appeal from the denial of its sovereign immunity. The Court nevertheless directed PDVSA to file a motion to stay that would also address the divestiture rule. Tr. 40:07-41:07. The following day, the Court entered the parties' stipulated orders in *Koch* and *Gold Reserve* (the "March 31 Orders") denying PDVSA's sovereign immunity and conditionally granting those plaintiffs writs of attachment *fieri facias* based on the March 23 Decision. *Koch*, No. 1:22-mc-156, D.I. 21; *Gold Reserve*, No. 1:22-mc-00453, D.I. 27.

On April 4, 2023, the Court entered an Oral Order directing the plaintiffs in the above-captioned cases to meet and confer and, within seven days of the Special Master filing its Supplemental Report in the *Crystallex* case, "submit a joint status report with a proposed briefing schedule regarding which judgments should be regarded as 'Additional Judgments' under the Sale Procedures Order." That order also directs the parties to include the views of the Sales Process Parties and third-party creditor Red Tree in that joint status report.

Today, April 6, 2023, PDVSA filed its timely notices of appeal in the above-captioned cases and concurrently files this motion for an order recognizing that the Court has been divested of jurisdiction or alternatively for an unconditional stay pending appeal.

## ARGUMENT

### I. The Court Should Recognize that It Has Been Divested of Jurisdiction

The March 23 and March 31 Orders are immediately appealable under the collateral order doctrine because they denied PDVSA's sovereign immunity defense under the FSIA. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 136 (3d Cir. 2019) (citing *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281-82 (3d Cir. 1993)). Accordingly, once PDVSA filed its timely notices of appeal, this Court was automatically divested of jurisdiction to proceed with any and all parts of the action against PDVSA until its appeals are conclusively resolved. *Princz v. Fed. Republic of Germany*, 998 F.2d 1, 1 (D.C. Cir. 1993) (per curiam) (citing *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982)); *Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 174 (E.D. Va. 1993) (holding that an appeal from a denial of sovereign immunity "divests this Court of jurisdiction over the remaining matters"), *aff'd*, 32 F.3d 77 (4th Cir. 1994); *Azima v. Rak Inv. Auth.*, No. 16-cv-1948, 2018 U.S. Dist. LEXIS 225192, at *5-7 (D.D.C. Nov. 5, 2018) (ruling that an appeal from a denial of sovereign immunity prohibits the district court from "proceed[ing] with any part of the action" because such immunity is a "threshold issue" that "divest[s] th[e District] Court of jurisdiction over the *entire* case") (Ketanji Brown Jackson, J.); *see also In re Socialist People's Libyan Arab Jamahiriya*, No. 04-7038, 2004 U.S. App. LEXIS 7244, at *1 (D.C. Cir. Apr. 13, 2004) (per curiam) (granting mandamus to halt "any and all proceedings" in the district court pending an appeal from a denial of sovereign immunity).

Indeed, the collateral order doctrine and divestiture rule take on particular importance

5

where, as here, the appeal relates to the denial of sovereign immunity. Without the divestiture rule, the right to an immediate appeal by a presumptively separate and presumptively immune agency or instrumentality of a foreign state, such as PDVSA, would have no meaning. As the Third Circuit explained in *Federal Insurance*, if a case were to proceed in the district court against a corporate instrumentality of a foreign state during an appeal from the denial of its sovereign immunity, the "legal and practical value" of the sovereign immunity defense would be "destroy[ed]," and the district court's decision denying sovereign immunity would be "effectively unreviewable." 12 F.3d at 1281-82 (quoting *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 498-99 (1989)); s*ee also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017); *United States v. Moats,* 961 F.2d 1198, 1201 (5th Cir. 1992). That analysis applies with equal force where, as here, the district court denies the agency or instrumentality's independent sovereign immunity based on an alter ego theory. *See EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 87, 88 n.38 & n.45 (2d Cir. 2015) (noting that "the threshold sovereign-immunity determination is immediately reviewable," as "it would be inconsistent with the underlying purpose of the foreign-sovereign-immunity doctrine to subject [an instrumentality of a foreign state] to further burdensome litigation" before "conclusively" determining the putative alter ego's sovereign immunity).

Contrary to some of the plaintiffs' suggestions at the March 30 conference (Tr. 12:13, 16:19, 19:15), the Court does not retain jurisdiction to "enforce" the judgments or resolve any "procedural matters" *against PDVSA*, whose very entitlement to sovereign immunity from any of these proceedings is now before the Third Circuit. This Court also previously relied on *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987), to support the view that it retained jurisdiction to proceed with enforcement pending PDVSA's appeals from the denial of its

sovereign immunity in *Crystallex*. No. 1:17-mc-151, D.I. 95 at 3. However, cases like *N.L.R.B.* are inapposite because they do not involve sovereign-immunity appeals. If this Court were to move forward in these cases, including by treating the judgments as Additional Judgments under the Sales Procedures Order or even requiring PDVSA to brief that issue, during the pendency of PDVSA's appeals, each additional step would be an impermissible infringement on PDVSA's presumptive immunity and would deny PDVSA the full benefits to which it is entitled under the FSIA. *See Process & Indus. Devel. Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 581, 584 (D.C. Cir. 2020) ("*P&ID*"); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000). Indeed, after this Court decided to retain jurisdiction in *Crystallex*, the Third Circuit *sua sponte* unconditionally stayed "all proceedings" in the district court pending PDVSA's appeal, further demonstrating that sovereign-immunity appeals are different. *In re Petróleos de Venezuela, S.A.*, No. 18-2889, 2018 U.S. App. LEXIS 37167, at *2 (3d Cir. Nov. 23, 2018).[1]

## II. Alternatively, the Court Should Grant an Unconditional Stay

If this Court were inclined to reject the divestiture rule or take the view that it retains jurisdiction with respect to any aspect of the action against PDVSA in the above-captioned cases, the Court should nevertheless enter a discretionary, unconditional stay pending PDVSA's appeals from the denial of its sovereign immunity. A district court has the inherent power to stay proceedings at any stage of the litigation "with economy of time and effort for itself, for counsel, and for litigants." *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976)

---

[1] As a technical matter, there should be no need for a formal order staying proceedings pending appeal from the denial of sovereign immunity, because the filing of the notice of appeal has that effect. *See Princz*, 998 F.2d at 1. Nevertheless, like the Third Circuit, other courts have also entered unconditional stays to avoid embroiling the sovereign entity in further litigation pending appeal in this context. *See, e.g.*, *De Csepel v. Republic of Hungary*, No. 10-1261 (ESH), 2011 U.S. Dist. LEXIS 150696, at *9 (D.D.C. Nov. 30, 2011); *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 170 (D.D.C. 2006); *Mamani v. Berzain*, No. 07-22459, 2010 U.S. Dist. LEXIS 147349, at *8 (S.D. Fla. Mar. 16, 2010).

(quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). Four factors inform a court's decision to stay proceedings pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Revel AC, Inc. v. IDEA Boardwalk LLC (In re Revel AC, Inc.)*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)) (alteration supplied). Courts follow a "sliding scale approach" in which "the first two factors are the most critical." *Id.* at 570. "But depending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal." *Id*. at 571.

*__Likelihood of Success__*. PDVSA's appeals present, "at a minimum, serious questions," *Revel*, 802 F.3d at 570, 571, about the correctness of the Court's determination that the Interim Government's exercise of shareholder and regulatory control of PDVSA (as governed by the *ad hoc* Board) is "materially identical" to how the illegitimate (and now legally irrelevant) Maduro regime treated PDVSA as determined by this Court in 2018 and affirmed by the Third Circuit in *Crystallex*. March 23 Op. 36. As PDVSA explained in its briefs, there have been substantial and material changes in the relationship between the Republic and PDVSA since the United States recognized the Interim Government as the only legitimate government in Venezuela in January 2019, and salient facts that this Court and the Third Circuit relied on in concluding that PDVSA was extensively controlled by the Maduro regime simply do not exist with respect to the Interim Government. *See, e.g.*, *OIEG*, No. 1:19-mc-00290, D.I. 65 at 20-29; *Huntington Ingalls*, No. 1:20-mc-00257, D.I. 32 at 12-26. That was also the view of the U.S. government. *See* U.S.

Statement of Interest, at 8 (noting that the circumstances have changed since the transition to the Interim Government, and therefore "the fundamental premises underlying the alter ego ruling [in *Crystallex*] no longer hold"), Meehan Decl., Ex. 8, *OIEG*, No. 1:19-mc-00290, D.I. 67-1.

Moreover, significant findings of fact made by this Court with respect to the Interim Government's relationship with PDVSA are subject to reversal as clearly erroneous, because they are not supported but rather are contradicted by direct evidence. For instance, the Court found based on hearsay that the Republic uses PDVSA's assets to fund itself and pay for its own legal fees bypassing corporate dividends, without so much as acknowledging that PDVSA's witness (a member of the *ad hoc* Board) testified based on personal knowledge that PDVSA's funds were not used by the Interim Government and that PDVSA instead loaned the Republic funds to pay for some legal fees in the interest of protecting PDVSA's assets in U.S. courts. *Compare* March 23 Op. 19, 42 *with* Medina Decl. ¶¶ 17, 19, *OIEG*, No. 1:19-mc-00290, D.I. 68, and 4/30/21 Hr. Tr. 257:1-14, *OIEG*, No. 1:19-mc-00290, D.I. 92; *see United States v. Williams*, 753 F.2d 329, 336 (4th Cir. 1985) (reversing a finding of fact that was contradicted by direct evidence, which "[i]n large measure [] was not discussed by the district court").

Without those facts and in light of the other changes, this Court's legal conclusion that the Interim Government extensively controls PDVSA cannot be sustained under *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), and its progeny, especially in the unprecedented context in which the United States has recognized only one legitimate government in Venezuela and that government is attempting to protect the Republic's assets against the usurpation of power by an illegitimate regime. PDVSA's odds of success are thus "significantly better than negligible." *Revel*, 802 F.3d. at 571.

*Irreparable harm*. Without a doubt, PDVSA would suffer an "irreparable loss" of its

9

presumptive immunity by being forced to defend against further efforts to enforce these judgments while PDVSA's appeals from the denial of its sovereign immunity are pending. *Moats*, 961 F.2d at 1203; *accord P&ID*, 962 F.3d at 586; *Fed. Ins. Co.*, 12 F.3d at 1281-82.

Moreover, by adding these judgments as Additional Judgments under the Sales Procedures Order before PDVSA's appeals have been conclusively resolved, there would be an additional risk of irreparable harm to PDVSA, namely the loss of its shares in PDV Holding, Inc. ("PDVH"). *See Revel*, 802 F.3d. at 569 ("[T]he alleged harm need not be occurring or be certain before a court may grant relief." (citation omitted)). In the event the Third Circuit reverses the March 23 and March 31 Orders, these plaintiffs would not be entitled to reach PDVSA's assets to satisfy judgments entered solely against the Republic. It also follows that they would not be entitled to participate in the sales process in *Crystallex*. However, if these judgments were to be added as Additional Judgments—and therefore treated as "Attached Judgments"—under the Sales Procedures Order, the Special Master would be required to consider these judgments in implementing the sale, meaning the Special Master would be compelled to market and sell more PDVH shares than are necessary to satisfy Crystallex's judgment, the only Attached Judgment at this time. *See* Sales Procedures Order ¶ 30. As the Special Master's counsel explained at the March 30 hearing in *Crystallex*:

> [U]nderstanding how much is at issue . . . how much in judgments . . . could bear on some of the recommendations that we make. For instance, if there's a dollar of judgments versus 6 or 8 billion, it's going to weigh in on the types of recommendations that we would make moving forward.

Tr. 86:17-24.

Any scenario in which the Special Master is making recommendations about the design of a sales transaction to be implemented based on the judgments in the above-captioned cases

10

before PDVSA's appeals are conclusively resolved would risk irreversibly divesting PDVSA of its ownership or at least controlling interest in PDVH and, consequently, of the value of PDVH's indirect subsidiary Citgo Petroleum Corp. That is because this Court may not be able to unwind the effects of the sale process, if after that process is implemented, the Third Circuit reverses this Court's March 23 and 31 Orders. And, even if a sale does not occur before PDVSA's appeals are resolved, all of the effort put into designing a sales transactions based on these judgments would ultimately be wasted if PDVSA prevails on appeal, because a new sales transaction would have to be designed to sell only the amount of shares necessary to satisfy duly added judgments.

*No Prejudice to Other Parties*. An unconditional stay pending appeal will not prejudice any of the parties. None of these plaintiffs have a writ of attachment of the PDVH shares and they cannot obtain such an attachment without an OFAC license, which none of them have. *See* E.O. 13850, 83 Fed. Reg. 55243 (Nov. 1, 2018); 31 C.F.R. § 591.202(a), (e). Any potential delay in recovering on any of the judgments in the above-captioned cases is therefore too speculative to outweigh the irreversible loss of the legal and practical value of PDVSA's sovereign immunity or the serious risk of irreparable harm to its property. *See Revel*, 802 F.3d at 572-73 (balancing the harms in favor of the movant where its injury was "virtually guaranteed," and the opponent's alleged harm was "at best speculative"). In any case, post-judgment interest protects these plaintiffs from any potential delay in collecting on their judgments.

At the March 30 conference, one creditor suggested that PDVSA should be required to post a bond to stay proceedings pending appeal. Tr. 14:11. That is wrong as a matter of law. PDVSA cannot be required to post a bond while its appeals from a denial of sovereign immunity is pending. Again, a contrary rule would eviscerate the legal and practical value of its sovereign immunity defense, which includes being free from the "costs, in time and expense, . . . attendant

to litigation." *Kelly*, 213 F.3d at 849. Plus, none of these plaintiffs have an actual attachment and cannot get one without an OFAC license, so they have no interest in the PDVH shares to secure pending appeal.[2]

***Public Interest***. Finally, there is a strong public interest in maintaining stable relations with friendly foreign governments. Consequently, as a general matter, U.S. courts should proceed cautiously when dealing with "the property of a friendly sovereign" so as to avoid "embarrass[ing]" the Executive Branch "in conducting foreign relations." *Ex parte Rep. of Peru*, 318 U.S. 578, 588 (1943). Here, the U.S. government has emphasized the importance of PDVSA's U.S. property in promoting U.S. foreign policy. *See* U.S. Statement of Interest, at 4 ("The efforts by creditors to enforce judgments against Venezuela by taking immediate steps toward a conditional sale of PdVSA's U.S.-based assets, including PDVH and CITGO, are detrimental to U.S. policy and the interim government's priorities."), Meehan Decl., Ex. 8, *OIEG*, No. 1:19-mc-00290, D.I. 67-1. And there is a real risk of unjustifiably undermining those efforts by proceeding against PDVSA in these cases before the Third Circuit has even had a chance to weigh in on PDVSA's threshold sovereign immunity defense.

---

[2] Even assuming PDVSA could be required to post a bond (which it cannot), OFAC sanctions make it impossible. In addition to generally blocking PDVSA's property, OFAC sanctions specifically prohibit any U.S. person or anyone within the United States from engaging in any financing transactions involving "new debt" of PDVSA "with a maturity of greater than 90 days." E.O. 13808 § 1(a)(i), 82 Fed. Reg. 166 (Aug. 29, 2017). According to OFAC, that includes any "bonds, loans, extensions of credit, loan guarantees, letters of credit, drafts, bankers acceptances, discount notes or bills, or commercial paper." U.S. Dept. of Treasury, OFAC, Other Sanctions Programs: *Venezuela Sanctions*, FAQ No. 511, https://ofac.treasury.gov/faqs/511. No bank or bonding company would or could take that risk. *See* 31 U.S.C. § 9304 (bond surety must be a U.S. person); Fed. R. App. P. 8(b) (bond surety must submit to jurisdiction of U.S. court).

## CONCLUSION

For these reasons, this Court should enter an order recognizing that it has been divested of jurisdiction with respect to any and all parts of the action against PDVSA in the above-captioned cases or, alternatively, enter an unconditional stay to the same effect pending PDVSA's interlocutory appeals.

Respectfully submitted,

HEYMAN ENERIO GATTUSO & HIRZEL LLP

OF COUNSEL:

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
Joseph D. Pizzurro (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
Juan O. Perla (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*/s/ Samuel Taylor Hirzel, II*
Samuel Taylor Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorneys for Petróleos de Venezuela, S.A.*

April 6, 2023