# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., <br><br>   Plaintiff., <br><br> v. <br><br> THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, <br><br>   Defendant. | C.A. No. 1:20-mc-00257-LPS |
| CRYSTALLEX INTERNATIONAL CORP., <br><br>   Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>   Defendant. | C.A. No. 1:17-mc-00151-LPS |
| TIDEWATER INVESTMENT SRL ET AL., <br><br>   Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>   Defendant. | C.A. No. 1:19-mc-00079-LPS |

**NORTHROP GRUMMAN SHIP SYSTEMS, INC.'S
RESPONSE TO OPENING BRIEFS ADDRESSING
<u>THE COURT'S MAY 10, 2023 ORDER</u>**

| | |
|---|---|
| DATED: June 7, 2023 | Respectfully submitted: |
| | /s/ *Peter J. Keane*_____ |
| OF COUNSEL: | Laura Davis Jones (DE Bar No. 2436) |
| Alexander A. Yanos *pro hac vice* | Peter J. Keane (DE Bar No. 5503) |
| Rajat Rana *pro hac vice* | Pachulski Stang Ziehl & Jones LLP |
| ALSTON & BIRD, LLP | 919 North Market Street, Suite 1700 |
| 90 Park Avenue, 15th Floor | P.O. Box 8705 |
| New York, NY 10016-1387 | Wilmington, DE 19899-8705 |
| 212-210-9400 | (302) 652-4100 |
| alex.yanos@alston.com | ljones@pszjlaw.com |
| rajat.rana@alston.com | pkeane@pszjlaw.com |
| | |
| Robert Poole *pro hac vice* | *Attorneys for Plaintiff* |
| ALSTON & BIRD, LLP | |
| 1201 W. Peachtree St. NE, Suite 4900 | |
| Atlanta, GA 30309 | |
| 404-881-4547 | |
| robert.poole@alston.com | |

## CONTENTS

ARGUMENT ........................................................................................................................... 1

    I.    Which, if any, judgments should be regarded as "Additional Judgments" under the Sale Procedures Order entered in the *Crystallex* Action? ....................... 1

        A.    The Venezuela Parties Cannot Rely on the Need for Physical Certificate of Shares to Prevent Designation of Additional Judgments ....................................................................................................... 2

        B.    Crystallex Wrongly Asserts Only Final Writs of Attachment Qualify for "Additional Judgment" Designation. ..................................................... 6

        C.    Registered Judgments Alone Should Not Qualify as "Additional Judgments" ............................................................................................... 7

    II.    Should the Court issue full, unconditional orders of attachment (including by converting conditional grants) to any creditors?  If yes, should the Court direct service of any such orders of attachment? ..................................................... 8

    III.    How should the Court determine the priority of any judgments that are made Additional Judgments? ............................................................................................. 9

CONCLUSION ...................................................................................................................... 10

DOCS_DE:243329.1 61134/001

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    2021 U.S. Dist. LEXIS 7793 (D. Del. Jan. 14, 2021)..........................................2, 3, 4

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    333 F. Supp. 3d 380 (D. Del. 2018)...............................................................................2

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    932 F.3d 126 (3d Cir. 2019)..........................................................................................2

*Jiménez v. Palacios*,
    250 A.3d 814 (Del. Del. Ch. 2019)................................................................................4

*OI European Grp., B.V., v. Bolivarian Rep. of Venez.*,
    23-2647, D.I. 55 ...........................................................................................................4

**STATUTES**

6 *Del. C.* § 8-112................................................................................................................2

8 *Del. C.* § 168...................................................................................................................5

8 *Del. C.* § 324(a)..............................................................................................................2

Plaintiff and judgment creditor Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated ("Plaintiff" or "Huntington Ingalls"), submits this brief in response to the various judgment creditors' opening briefs addressing the following questions in the Court's May 10, 2023 order:

1. Which, if any, judgments should be regarded as "Additional Judgments" under the Sale Procedures Order entered in the *Crystallex* Action?

2. Should the Court issue full, unconditional orders of attachment (including by converting conditional grants) to any creditors? If yes, should the Court direct service of any such orders of attachment?

3. How should the Court determine the priority of any judgments that are made Additional Judgments?

Huntington Ingalls maintains that the Court should: (*i*) designate Huntington Ingalls's conditional writ of attachment as an "Additional Judgment" under the Court's Sale Procedures Order; (*ii*) refrain from issuing *any* final, unconditional writs for *any* creditor until the Third Circuit lifts its stay or otherwise resolves PDVSA's appeal; and (*iii*) measure priority based upon the date a creditor filed its motion for writ of attachment. *See* No. 1:20-mc-00257, D.I. 95 ("HII Br."). Views to the contrary would not reflect a just and orderly path in light of the Court's prior decisions.

## **ARGUMENT**

### I. Which, if any, judgments should be regarded as "Additional Judgments" under the Sale Procedures Order entered in the *Crystallex* Action?

Huntington Ingalls opposes several arguments across the various opening briefs addressing the Court's first question. As explained below, the Court should consider all conditional writs of attachment as "Additional Judgments" under the Sale Procedures Order but refrain from designating as Additional Judgment Creditors those parties that simply registered a judgment before the Court. A writ of attachment (whether final or conditional) should be required before designating a judgment as an "Additional Judgment."

### A. The Venezuela Parties Cannot Rely on the Need for Physical Certificate of Shares to Prevent Designation of Additional Judgments

The Venezuela Parties argue that, under Delaware law, all parties in the sales process must have valid attachments, which they believe requires seizure of PDVSA's physical share certificate in PDVH. No. 1:17-mc-00151, D.I. 571 ("Vz. Br.") at 5-12. To support their argument, the Venezuela Parties rely upon 8 *Del. C.* § 324(a), which states that an "attachment is not laid and no order of sale shall issue unless § 8-112 of Title 6 has been satisfied." *Id.* at 8. Section 8-112(a) in turn provides that "the interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy." 6 *Del. C.* § 8-112. For its part, PDVH asserts that it does not have this physical certificate. Vz. Br. at 9. It guesses that it is currently held by the Maduro regime. *Id*. As a result, the Venezuela Parties argue that the U.S. Marshal cannot physically seize the certificate, which prevents the Court from issuing valid writs of attachment. *Id*. The Venezuela Parties conclude that this impediment prevents the Court from designating other creditors' writs of attachment as "Additional Judgments."

Venezuela's argument is counterfactual and should be rejected. First, Venezuela's argument ignores the fact that its shares are already attached. This Court has already issued a writ of attachment in the *Crystallex* matter, which the Third Circuit thereafter affirmed. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380 (D. Del. 2018); *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126 (3d Cir. 2019). If the shares are attached in Delaware by one creditor, then they can be attached by other creditors.

To be sure, later in the *Crystallex* proceedings, the Venezuela Parties attempted to quash the writ by asserting the same physical certificate argument, but the Court held that the Venezuelan parties were estopped from doing so. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.,*

2

2021 U.S. Dist. LEXIS 7793 (D. Del. Jan. 14, 2021).  Specifically, the Court held that the Venezuela Parties were judicially estopped from raising this argument after PDVSA previously convinced the Court that its stay for an interlocutory appeal did not require a bond because Crystallex's writ provided "sufficient security in lieu of a bond" and "[g]ranting an unconditional stay does not make Crystallex any worse off than it is today" because "a writ of attachment . . . provides the same functional security as a supersedeas bond." *Id.* at *33-35 (quoting No. 1:17-mc151, D.I. 98 at 6, 17).  In 2018, PDVSA specifically told the Court that "[t]he PDVH shares are located in Delaware, and they are not going anywhere." *Id.* at *37 (quoting No. 1:17-mc151, D.I. 98 at 6, 15).

PDVSA's position on the bond application conflicted with its later assertion that no valid writ exists without the seizure of physical shares.  *Id.* at *36.  The Court held that, "allowing PDVSA to prevail based on its new argument would show that the Court was previously misled by PDVSA into believing that the validity of the writ would not be subject to any further post-appeal challenge." *Id.*  The Court concluded that "[i]t would be inequitable for PDVSA to prevail based on its present position, which is incompatible with its prior position," *id.*, and that "[t]o permit PDVSA to avoid attachment and execution based on this lack of candor with the Court would be grossly unfair to Crystallex and would undermine the integrity of these proceedings," *id.* at *38.  The Court applied this holding not just to PDVSA, but to PDVH and CITGO as well.  *See id.* at *38-41.

As noted above, having attached the relevant shares in Delaware for one creditor, it must follow that the same shares are still present in Delaware and subject to attachment by other creditors similarly situated as Crystallex.  The shares cannot be in Delaware for Crystallex but missing for Huntington Ingalls.  In any event, the same reasoning of the Court's prior *Crystallex* order should bind the Venezuela Parties in relation to Huntington Ingalls.  To start, PDVSA did

3

not mention this physical certificate requirement when it consented to applying the Court's March 23, 2023, conditional writ holding. *See also Crystallex Int'l Corp.*, 2021 U.S. Dist. LEXIS 7793, at *26-32 (finding that the Venezuela Parties were collaterally estopped from asserting new defenses after the issuance of a writ). More to the point, Huntington Ingalls seeks the same writ that the Court issued in Crystallex's favor as a step in joining the auction proceedings Crystallex initiated based on its writ. It would be inequitable for PDVSA to betray its prior representations to the Court in *Crystallex* as a means of keeping Huntington Ingalls out of those very proceedings. It follows that the Court's judicial estoppel argument applies equally to Huntington Ingalls as it does to Crystallex.

The inequitable nature of the Venezuelan Parties' argument is obvious for an additional reason: it is at odds with their assertion that they control PDVSA and its subsidiaries. *See generally OI European Grp., B.V., v. Bolivarian Rep. of Venez.*, 23-2647, D.I. 55 (Venezuela's appellant reply brief asserting Interim Government's control over PDVSA); *see also Jiménez v. Palacios*, 250 A.3d 814 (Del. Del. Ch. 2019). The Venezuela Parties would have the Court recognize PDVSA's power over PDVH and its subsidiaries through its ownership of PDVH shares, all while arguing that those assets are not subject to attachment because they do not actually possess the shares in PDVH. Simply put, Venezuela's old, rejected argument is not just equally inequitable as applied to Huntington Ingalls as Crystallex, but also illogical when considering the day-to-day exercise of power Venezuela asserts through PDVSA's purported ownership of PDVH shares.[1]

---

[1] Indeed, as the Court found in its March 23, 2023 alter ego order (and as the Third Circuit will soon affirm), *Venezuela* exercises dominance over PDVH and its subsidiaries through the interim government's use of PDVSA's shares. The Maduro regime's control of other PDVSA assets outside of the United States only confirms the Court's finding.

4

Finally, as the Venezuela Parties admit, Delaware law provides a mechanism for the Court to remedy the situation. In the event that a share owner's certificate has been "lost, stolen or destroyed," Delaware law empowers the Court to "make an order requiring [a] corporation to issue and deliver . . . new uncertificated shares or a new certificate for such shares." 8 *Del. C.* § 168(b).[2] Delaware law further provides that "[a] creditor whose debtor is the owner of a certificated security [or] uncertificated security . . . is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process." 6 *Del. C.* § 8-112(e). The Court is already posed to exercise this authority, as evidenced in the Sale Procedures Order, which states:

> If the location of the PDVH Shares cannot be located with reasonable precision or if the Special Master reasonably determines that the custodian of the PDVH Shares is unlikely to cooperate in connection with an order compelling the person or entity to transfer the PDVH Shares in connection with any Sale Transaction, the Special Master shall file a recommendation with the Court in advance of the Sale Hearing regarding the appropriate steps to be taken to ensure that the Successful Bidder is able to actually purchase the applicable PDVH Shares in connection with the applicable Sale Transaction. The Special Master's recommendation may include, if appropriate, an order compelling PDVH to issue new certificates or uncertificated shares to the applicable Successful Bidder and cancel the registration of the shares attached to the books of PDVH.

No. 1:17-mc-151, D.I. 481 ("Sales Procedures Order") ¶ 49. It follows that the Court should reject Venezuela's physical certificate argument, designate Huntington Ingalls's conditional writ as an

---

[2] The Venezuela Parties are mistaken to believe that 8 *Del. C.* § 168 requires any judgment creditor to post a bond. *See* Vz Br. at 10 n.2. The statute requires "the lawful owner" of the stock to post a bond if it loses its physical certificates. 8 *Del. C.* § 168(b). It is therefore *PDVSA's* duty to post any necessary bond and retrieve the certificates necessary for their attachment. This makes sense. The security bond requirement protects "the corporation against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new uncertificated shares or new certificate." *Id.* Judgment Creditors, such as Huntington Ingalls, have no responsibility or liability stemming from PDVSA's lost physical certificates.

5

Additional Judgment, and await the Special Master's recommendation on how to remedy PDVSA's misplaced certificates pursuant to the Sale Procedures Order.

### B. Crystallex Wrongly Asserts Only Final Writs of Attachment Qualify for "Additional Judgment" Designation.

For its part, Crystallex argues that only final attachments should be regarded as Additional Judgments. No. 1:27-mc151, D.I. 573 ("Crystallex Br.") at 7. Crystallex is wrong. The Court should designate conditional writs of attachment as Additional Judgments as well. HII Br. at 4-5. The Sale Procedures Order affords the Court significant discretion as to what creditors it may designate as "Additional Judgment Creditors" holding "Additional Judgments." *See* Sale Procedures Order at ¶ 30. Indeed, OFAC interpreted the Sale Procedures Order's broad language to include conditional writs of attachment as "Additional Judgments" when it issued the Court a specific license. Under OFAC's license, designation as an Additional Judgment Creditor is a condition precedent to allowing issuance and service, which would result in a final, unconditional writ. *See* No. 1:20-mc-257, D.I. 90 ("OFAC License") at 8 (authorizing the Court to "engage in transactions and activities ordinarily incident and necessary to the issuance and service of a writ of *fieri facias* for any party named an 'Additional Judgment Creditor' by the Court").

Designating conditional writs of attachment as Additional Judgments also aids the sale process more generally. The Special Master would benefit from knowing the total amount of proceeds that he is trying to raise from the sale as early as possible. Furthermore, time is of the essence. While it is true that the Special Master tentatively planned a launch date of September 5, 2023, that date is not final. He left open the possibility of an earlier date if practicable. *See* No. 1:17-mc-151, D.I. 553 ¶ 7. In response, Crystallex maintains that those without final writs can seek attachments to the remaining shares at a later time. Crystallex Br. at 7-8. But there is no guarantee that the sale will result in excess funds if Delaware law orders only the attachment of

6

such shares sufficient to fulfill the creditor's judgment. Huntington Ingalls urges the Court to consider the context of their conditional writ. But for the Third Circuit's stay, the Court could finalize Huntington Ingalls's conditional writ pursuant to OFAC's specific license. It is in every party's interest to designate these conditional writs as Additional Judgments now.

### C. Registered Judgments Alone Should Not Qualify as "Additional Judgments"

Creditors such as Tidewater Investment SRL, Tidewater Caribe S.A., Valores Mundiales, S.L., Consorcio Andino, S.L., and Contrarian[3] assert that registered judgments alone qualify as "Additional Judgments." *See* No. 1:19-mc-79, D.I. 35; No. 1:17-mc-151, D.I. 657 at 2; No. 1:17-mc-151, D.I. 576 at 2-3.[4] Not so. Because each of these creditors have judgments against Venezuela (as opposed to PDVSA directly), they must still move to attach PDVSA's shares of PDVH under the alter ego doctrine in order to render PDVSA's shares in PDVH vulnerable to their respective registered judgments. As all judgment creditors are well aware, a judgment alone does not entitle a creditor to attach a debtor's assets.

For similar reasons, the Court should not designate Banco San Juan Internacional's ("Banco San Juan") foreign judgment as an Additional Judgment. *See* No. 1:17-mc-151, D.I. 575 at 2. While its foreign judgment is against PDVSA directly, Banco San Juan has yet to successfully domesticate the judgment before the District Court for the District of Columbia, not to mention register it in this District and seek a writ of attachment. *Id.* at 1. It is far too premature to consider

---

[3] "Contrarian" refers to Contrarian Capital Management, L.L.C., Contrarian Capital Fund I, L.P., Contrarian Dome du Gouter Master Fund, LP, Contrarian Capital Senior Secured, L.P., Contrarian EM II, LP, Contrarian Emerging Markets, L.P., Boston Patriot Summer St LLC, Polonius Holdings, LLC, Emma 1 Master Fund, L.P., Contrarian Funds, L.L.C., and E1 SP, a Segregated Account of EMAP SPC. No. 1:1-mc-151, D.I. 567 at 1.

[4] At the time of writing its opening brief, Valores Mundiales, S.L. and Consorcio Andino, S.L. had yet to register their judgment before this Court. *Id.* at 2.

7

Banco San Juan's foreign judgment as an Additional Judgment when it currently lacks the authority of a United States court order.

II. **Should the Court issue full, unconditional orders of attachment (including by converting conditional grants) to any creditors? If yes, should the Court direct service of any such orders of attachment?**

Venezuela Parties parrot their physical certificate argument to assert that the Court cannot issue or serve final writs because the OFAC License is for Additional Judgments only and (in the Venezuela Parties' view) Additional Judgments cannot exist where the Venezuela Parties lost the physical certificate of PDVH shares. Vz. Br. at 13. For the reasons stated above, PDVSA's loss of its physical certificate of PDVH shares does not prevent the Court from designating a party as an Additional Judgment Creditor. Furthermore, the OFAC License proves that OFAC understood conditional writs of attachment—that is, those writs in need of the OFAC License to become final and unconditional—qualified as "Additional Judgments" under the Sale Procedures Order. *See* OFAC License at 8. The Court should therefore consider any conditional writ an "Additional Judgment," which the OFAC License authorizes for issuance and service.

Despite having the authority to issue and serve the conditional writs today, Huntington Ingalls reiterates that the Court should refrain from doing so for *any* party, including the creditors with debts against PDVSA directly such as Siemens, Red Tree, Conoco Phillips, or Refineria Di Korsou N.V. ("RDK").[5] *See* No. 1:17-mc-151, D.I. 564; No. 1:17-mc-151, D.I. 566 at 7; No. 1:17-mc-151, D.I. 569 at 9-10 ; No. 1:17-mc-151, D.I. 574 at 7-8. To preserve priority as explained in Huntington Ingalls's opening brief, HII Br. at 5-7, the Court should refrain from finalizing or serving *any* writ until the Third Circuit either (*i*) lifts the temporary stay or (*ii*) resolves the merits

---

[5] Huntington Ingalls adopts by reference ACL1 Investments Ltd.'s, ACL2 Investments Ltd.'s, and LDO (Cayman) XVIII Ltd.'s argument in their response brief addressing RDK's purported writ of attachment.

8

of the pending alter ego appeal, whichever event occurs first.  After the stay is lifted, the Court should promptly issue final, unconditional writs and order delivery of those writs to the U.S. Marshals Service sequentially based upon the date on which a party filed its motion for writ of attachment.

### III. How should the Court determine the priority of any judgments that are made Additional Judgments?

The Court should consider priority in direct relation to the order in which parties filed their respective motions requesting writs of attachment *fieri facias*.  HII Br. at 8.  The Venezuela Parties take no position on this issue.  Siemens and Conoco Phillips, however, request the Court consider priority on the basis of the date when a party received a conditional writ.  No. 1:17-mc-151, D.I. 569 at 13; No. 1:17-mc-151, D.I. 574 at 8.  Tidewater argues that the Court should measure based on the date that a creditor filed its registered judgment.  No. 1:19-mc-00079, D.I. 35 at 3.  The Court should ***not*** adopt either rule.  Measuring from the date of ***requesting*** a writ of attachment is the most equitable route because it respects the work and effort of those parties that sought to prove a right to attachment first.  For example, Tidewater's position allows it to jump priority over Huntington Ingalls.  Tidewater registered its award early in 2019, filed a motion for writ of attachment later that year, but then stayed its proceedings pending the outcome of OIEG and Huntington Ingalls's alter ego litigation.  Rather than allowing Tidewater to use other creditors' expense and diligence to claim a higher ranking in priority, the Court should measure priority based on Tidewater's motion to file an updated, supplemental brief in support of its writ of attachment.  Measuring priority based on the filing date of petitions for writs of attachment also has the added benefit of avoiding the confusion that the May 23, 2023, order would create if the Court were to measure priority on the date of issuing a conditional writ since the Court's order granted several conditional writs at once.

9

The Court should also reject both Siemens's and Banco San Juan's assertion that PDVSA creditors should receive priority over Venezuela creditors pursuing an alter ego theory of liability. *See* No. 1:17-mc-151, D.I. 569 at 14-15; No. 1:17-mc-151, D.I. 575 at 2. This is nothing but a bare attempt for late-in-time creditors to jump the line of those creditors holding domesticated judgments against Venezuela that have long since been before this Court seeking attachment of PDVSA's assets under an alter ego theory. Once the Court ruled that PDVSA was the alter ego of Venezuela, the debts of Venezuela and the debts of PDVSA were one and the same. There should be no greater entitlement to PDVSA's assets outside of when a party first sought attachment. Siemens admits as much, allowing a narrow exception for Crystallex, creditor of Venezuela proceeding on an alter ego theory, to maintain its priority above all other creditors—whether they are creditors of PDVSA or Venezuela. *See* No. 1:17-mc-151, D.I. 569 at 14.

## **CONCLUSION**

For the above reasons, Huntington Ingalls requests that the Court stay the *Crystallex* auction proceedings until the conclusion of the Third Circuit's stay and/or the denial of PDVSA's appeal, whichever comes first. At that time, Huntington Ingalls requests that the Court issue final, unconditional writs of attachment and order their delivery and service upon PDVH in the order in which the judgment creditors filed their respective motions for writs of attachment *fieri facias*.

DATED: June 7, 2023

Respectfully submitted:

*/s/ Peter J. Keane*

OF COUNSEL:
Alexander A. Yanos *pro hac vice*
Rajat Rana *pro hac vice*
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
rajat.rana@alston.com

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, Suite 1700
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

| | |
|---|---|
| Robert Poole *pro hac vice*<br>ALSTON & BIRD, LLP<br>1201 W. Peachtree St. NE, Suite 4900<br>Atlanta, GA 30309<br>404-881-4547<br>robert.poole@alston.com | *Attorneys for Plaintiff* |